**STATE of Maine**

v.

**Ronald PINKHAM.**

Supreme Judicial Court of Maine.

Argued June 8, 1989.

Decided Oct. 24, 1989.

David W. Crook, Dist. Atty., Evert Fowle (orally), Asst. Dist. Atty., Skowhegan, for the State.

John Alsop, Andrew Ketterer (orally), Ketterer and Alsop, Skowhegan, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

HORNBY, Justice.

The question in this case is whether a police officer has "specific and articulable facts" to justify stopping and warning a driver when he observes improper driving behavior not worthy of a citation for a traffic infraction. Concluding that a civil or criminal infraction is not always essential and that safety reasons alone could justify such a stop, we vacate the judgment of the District Court (Skowhegan, *MacNichol, J.*) that granted the defendant's motion to suppress evidence and remand for further proceedings.

At about 2:00 A.M. on a summer Sunday morning a police officer in the town of Skowhegan observed the defendant drive down Russell Street to its intersection with Madison Avenue. Weather conditions were clear and there were no other vehicles around. At the Russell–Madison intersection, Russell Street is a one-way street divided into three lanes. Well-marked and clearly visible directional arrows painted on the pavement indicate that the right lane is to be used for turning right onto Madison Avenue, the middle lane is to be used for proceeding ahead through the intersection onto Elm Street and the left lane is to be used for turning left onto Madison Avenue. There are yield signs but no traffic lights at the intersection.

The defendant entered the right lane, slowed down, then instead of turning right

as the lane markings directed, and without making any signals, passed straight through the intersection and quickly proceeded up Elm Street. The police officer pulled the defendant over "merely for safety reasons," as he testified, and "to inquire about the improper lane usage and to inform him that in the future, should he use the lanes, to be sure to advise other drivers of his intentions . . ."—"performing an informational function" in the District Court's words. As a result of the stop, however, the police officer observed circumstances that led to a preliminary breath test and an ultimate arrest for operating under the influence.

On the defendant's motion to suppress the evidence resulting from the stop, the District Court reasoned that the grounds identified by the police officer did not justify the stop. It interpreted *State v. Caron,* 534 A.2d 978 (Me.1987), as requiring more —specifically, grounds for believing that a violation of law had occurred. The District Court found that here the defendant had committed no infraction of state law in ignoring the directional arrow on the pavement and that the reason for the stop was only to convey information or a warning. The District Court therefore granted the defendant's motion to suppress.

*Caron* involved a one-time straddling of the center line for 25 to 50 yards with no oncoming traffic on an early morning. *Id.* at 978–79. In *Caron,* this Court held that the single incident of lane-straddling "did not give rise to an objectively reasonable suspicion that criminal activity was involved." *Id.* In *Caron* we had no occasion to focus upon the adequacy of a safety justification.

This record presents only the safety issue. The Skowhegan police officer had no suspicion of criminal activity,[1] but simply observed improper lane usage and pulled the driver over to warn him about improper driving behavior. Thus, we must decide whether safety reasons alone can ever justify a stop.

The Fourth Amendment standard is clear: "[i]n order to initiate an investigation involving brief detention short of a formal arrest, a law enforcement officer must act on the basis of 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *State v. Griffin,* 459 A.2d 1086, 1089 (Me.1983) (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889 (1968)). Nothing in the Fourth Amendment requires that the "specific and articulable facts" relate to suspected criminal activity, although that was the factual context of both *Terry* and *Griffin.* If we were to insist upon suspicion of activity amounting to a criminal or civil infraction to meet the *Terry/Griffin* standard, we would be overlooking the police officer's legitimate role as a public servant to assist those in distress and to maintain and foster public safety. "Local police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973) (upholding, for public safety reasons, search of out-of-state police officer's abandoned vehicle before leaving it unattended, on the belief that it might contain his service revolver). Police officers do not violate the Fourth Amendment if they stop a vehicle when they have adequate grounds to believe the driver is ill or falling asleep, *cf.* 3 W. LaFave, *Search & Seizure* § 7.4(f), at 123–24 and cases cited at n. 114 (1987 & Supp.1989). Safety reasons alone can be sufficient if they are based upon "specific and articulable facts." For example, we

---

**1.** There was substantial discussion in the District Court whether markings painted on a road surface are "placed or erected" within the meaning of 29 M.R.S.A. § 1(17–B) (1978) so as to create a violation of 29 M.R.S.A. § 941–A (Pamph.1988) out of the driving behavior and whether a municipal ordinance could have any effect. Because the police officer did not testify that any infraction prompted him to pull the defendant over, we do not decide whether a violation in fact occurred.

have recently upheld a stop when blinking headlights led an officer to halt a vehicle for safety reasons. *State v. Fuller*, 556 A.2d 224 (Me.1989); *accord, State v. Puig*, 112 Ariz. 519, 544 P.2d 201 (1975) (suspicion of defective turn signals justifies stop); *State v. Harrison*, 111 Ariz. 508, 533 P.2d 1143 (1975) (bouncing left rear tire justifies stop). In such instances, the "specific and articulable facts" are not related to suspected infractions of the law, yet the intrusion is warranted.

The stop here was not a random stop like that condemned in *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979), and there is no suggestion that the safety justification was only a pretext. Here the officer's observation of the defendant's misuse of the marked lanes could furnish "specific and articulable facts" to justify pulling him over for safety purposes to advise him of his improper use of the intersection. It could provide an affirmative answer to *Terry's* question: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" 392 U.S. at 21–22, 88 S.Ct. at 1880 (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). But we do not decide this issue as an appellate court; it is a judgment for the District Court to make in the first instance now that we have made clear that a civil or criminal violation is not always prerequisite to a stop. We therefore remand for reconsideration.

Because the District Court granted the motion to suppress evidence resulting from the vehicle stop, thus effectively terminating the action, the defendant never had the opportunity to conduct cross-examination on his other motions, an issue he preserved by cross-appeal as the State concedes. Depending upon the outcome of the District Court's reconsideration of the motion to suppress on remand, it may also be necessary for the District Court to take further testimony on the remaining motions.

The entry is:

Order on motion to suppress evidence vacated;

Order denying motion to suppress statements, confessions or admissions vacated;

Order denying motion to suppress evidence of test refusal vacated;

Remanded to the District Court for further proceedings.

McKUSICK, C.J., and WATHEN, CLIFFORD and COLLINS, JJ., concurring.

GLASSMAN, Justice, dissenting.

I cannot agree with the court that a possible future risk to the safety of persons or property warrants the intrusion of a present stop of a motor vehicle. I would affirm the decision of the District Court.

At the hearing to suppress the evidence seized after the stop of Pinkham's car, the police officer testified that neither the speed of the car nor the manner in which it was driven caused him to stop the car. The officer stopped Pinkham's vehicle after it went straight ahead when the directional arrow painted on the pavement indicated that the lane should be used for a right turn. There was no other vehicular or pedestrian traffic in the area. He made the stop at 2:00 a.m. in Skowhegan "purely for safety reasons ... to inform [Pinkham] that in the future, should he use the lanes, to be sure to advise other drivers of his intentions." The District Court found that no traffic violation had occurred and that Pinkham's "driving in the right lane rather than the middle lane as he went through the intersection at 2:00 a.m. with no other traffic on the road is not a significant act and I so find." The court concluded that "on these facts" the stop was not warranted and granted Pinkham's motion to suppress the seized evidence.

It is clear that on the evidence before it that the District Court could have found that the officer could not reasonably believe that any risk to the safety of persons or property had occurred, was present or was imminent, and could properly conclude, as the court did, that the intrusion of the stop was not warranted. *See State v.*

*Cote,* 518 A.2d 454, 456 (Me.1986) (trial court's conclusion on ultimate question of whether stop warranted must stand if any competent evidence in record supports it); *State v. Moulton,* 481 A.2d 155, 163 (Me. 1984) (in addition to facts found, must be assumed trial court found for defendant on all factual issues necessarily invoked in ultimate favorable decision for defendant).

In vacating the trial court's decision, this court establishes a new and different standard to govern the legality of a stop for safety reasons. This standard differs significantly from the well-established standard governing the validity of a stop for a believed civil infraction or a criminal violation that we have previously applied to a stop for safety reasons. The court today holds that the police officer's apparent concern that at some future time Pinkham might not comply with the painted directional arrow when other vehicular or pedestrian traffic might be at the intersection is a sufficient "specific and articulable fact" to give rise to an objectively reasonable belief that safety reasons warrant the intrusion of a stop.

This is a substantial departure from the holding in *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889 (1968), and *State v. Griffin,* 459 A.2d 1086, 1089 (Me.1983), that the specific and articulable facts when viewed objectively must form a basis for a reasonable belief that criminal activity [or a civil infraction] *had taken place, was taking place or imminently would occur.* In *State v. Caron,* 534 A.2d 978, 979 (Me.1987), we reemphasized that if the facts did not meet this standard the court would be sanctioning stops on a mere hunch or on speculation contrary to the fourth amendment to the United States Constitution and article I, section 5 of the Maine Constitution. *See also Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

Nothing in our decision in *State v. Fuller,* 556 A.2d 224 (Me.1989), suggests that we departed from this well-established rule set forth in *Terry, Griffin,* and *Caron.* In *Fuller,* applying the standard of *Terry* and *Griffin,* we found no clear error in the trial court's finding that a police officer's testimony that Fuller's car approached him at 6:30 p.m. on October 9, 1987 with its headlights blinking on and off four or five times within a quarter mile supported an objectively reasonable belief that the headlights were defective. As in the other cases cited by the court,—*State v. Puig,* 112 Ariz. 519, 544 P.2d 201 (1975) (defective turn signal); *State v. Harrison,* 111 Ariz. 508, 533 P.2d 1143 (1975) (bouncing left rear tire)—*Fuller* dealt with observable defective equipment on the vehicle stopped. In each of these cases, the specific observable defect would warrant a reasonable belief that there was a present or imminent risk to the safety of persons or property. The facts in this case are clearly distinguishable as no equipment defect was present.

I find no authority, nor does the court cite any, to support the proposition it advances today: that the intrusion of a stop can be justified on the basis of a *possible future* risk to the safety of persons or property.