STATE of Maine

v.

**Francis Michael TARANTINO.**

Supreme Judicial Court of Maine.

Argued Jan. 14, 1991.

Decided Feb. 25, 1991.

William Anderson (orally), Dist. Atty., Rockland, for plaintiff.

Burt Kettle, Brunswick, James Sultan (orally), Rankan & Sultan, Boston, Mass., for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and BRODY, JJ.

ROBERTS, Justice.

Francis Michael Tarantino entered conditional pleas of guilty to unlawful furnishing and trafficking in scheduled drugs. By this appeal, Tarantino challenges an order of the Superior Court (Waldo County, *Smith J.*) denying his motion to suppress contraband seized in a search of his car. Because the search of Tarantino's car was proper under the automobile exception to the warrant requirement, we affirm Tarantino's convictions.

During the late afternoon of September 10, 1988, Deputy Kelvin Bickford of the Knox County Sheriff's Department and two other Knox County deputies stopped and searched Tarantino and his 1988 Volvo

as he drove it off the Vinalhaven–to–Rockland ferry. The three police officers found 2.49 lbs. of marijuana, 20.5 grams of cocaine, $19,299.33 in cash and assorted drug paraphernalia in Tarantino's car.

The search culminated an investigation into Tarantino's activities on Vinalhaven and North Haven Islands which began on September 9, 1988 when Bickford received calls from officers on Vinalhaven regarding a complaint handled by a Deputy Benner. According to Bickford, Benner personally called and informed him that he had been called to a golf course the previous day to deal with an unruly patron who turned out to be Tarantino. When he arrived at the golf course, Benner discovered Tarantino lying shirtless on a fairway and asked him for identification. Tarantino then threatened Benner with a golf club at which point Benner calmed Tarantino by pointing his revolver at him. The two then walked into the club house where Tarantino said he had some identification. As they approached Tarantino's duffel bag, Tarantino indicated to Benner that his bag was open and claimed that someone had opened it while he was golfing. Tarantino then pulled out a bag that looked like marijuana and a bag that looked like cocaine and threw them toward Benner, saying, "look what they've put in my bag." Benner took the bags and he and Tarantino parted company even though Tarantino was not able to produce any identification.

Later, Bickford learned from a Deputy McIntosh that McIntosh had been approached by a "citizen" of Vinalhaven whose name was not provided to Bickford. This citizen had told McIntosh that he had seen two one-pound bricks of marijuana in "Michael" Tarantino's [1] Volvo. The citizen further claimed that Tarantino had told him that he had already sold one of the bricks to Charlie Weeda, a person Bickford believed was a drug dealer, and that Tarantino was attempting to sell the other pound to another named person. Bickford also learned from McIntosh that he had seen

Tarantino on the island several days earlier, that he was driving a 1988 Volvo and that he had been staying at a bed and breakfast across from the former police department.

Meanwhile, Bickford received "between four and six" telephone calls from a named person who told Bickford that a "very large dealer" named "Frank or Mike" was on the island, that this person was dangerous and that something should be done. According to Bickford's testimony, this person "kept calling back and telling me [Tarantino's] whereabouts on the island, he was here or he was staying up to the bed and breakfast across from what used to be the old P.D." but never indicated how he had received this information.

That same day, Bickford decided to seek a warrant to arrest Tarantino and search his car. He went to an assistant district attorney and told her what he knew. She advised him that he had enough information and should prepare an affidavit to give to a complaint justice. Bickford then prepared an affidavit that recited the facts of the incident at the golf course and further stated that:

> On 9 Sept. 88 I spoke to James Knowlton of Vinalhaven on the phone and he told me that their [sic] was a very large dealer on the island. He told me that he did not know the subjects [sic] name, but it was something like Frank or Mike. He went on to say that this person was dangerous and something should be done.
>
> On 9 Sept. 88 I spoke to Dep. McIntosh on the Phone and he relayed the following information to me about a subject on Vinalhaven. He told me that a Citizen had come to him and told him a subject by the name of Michael F. Tarantino had 2 Items in his trunk that he said was [sic] 1 pound bricks of Marijuana. The subject said he was told he had one sold to Charlie Weeda a person known to this affiant as a person living on the Island

---

**1.** This mistake, which later found its way into Bickford's affidavit and the search warrant also found its way onto the docket. During the suppression hearing the Superior Court took note of the error and amended the official documents to reflect the correct name of this defendant, Francis Michael Tarantino, not Michael Francis Tarantino.

and had heard of the subject dealing Marijuana. Dep. McIntosh told me that this person was in fact tring [sic] to leave the Island and did know that subject had one of the two pounds left in the trunk. Bickford's affidavit also stated the number of years Benner had been an officer and his belief that Benner could recognize certain illegal drugs.

Bickford was aware that the ferry from Vinalhaven was due to arrive and that Tarantino was in the waiting line on Vinalhaven to take the journey. Because of this time constraint, he did not make another call to the assistant district attorney to check over his affidavit but instead proceeded to see a justice of the peace who reviewed the affidavit, asked Bickford to add a few lines and then signed the warrant Bickford had prepared. The warrant authorized Bickford to search "Michael F. Tarrantino" and to "search for" the "person of Michael F. Tarrantino and the vehicle belonging to him described as a Blue Volvo 4 Dr. sedan bearing MA Registration 697 NAK...." Although the affidavit had mentioned probable cause to believe that the automobile contained "illegal drugs," the warrant contained no direction to the officers to search for any specific items. After receiving the warrant, the officers were informed by sources on Vinalhaven that Tarantino had not made the 5:15 p.m. ferry. Bickford and his fellow officers then held the warrant until the following afternoon when Tarantino finally made the crossing and they were able to search his car.

After his arrest, Tarantino moved to suppress all of the evidence gathered pursuant to the car search. Tarantino argued that the warrant had been improperly issued since the affidavit had not established the reliability of the informants. The State argued that the warrant was based on sufficient evidence and, alternatively, that Bickford had executed it in good faith. The court took note of the relaxed warrant requirements that had grown out of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and *State v. Knowlton*, 489 A.2d 529 (Me.1985), but nevertheless found that the issuing magistrate had

not been given a substantial evidentiary basis upon which to have issued the warrant. The court did find, however, that Bickford had executed the warrant in good faith, thus permitting an exception to the exclusionary rule under *U.S. v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Tarantino subsequently entered a conditional guilty plea preserving his right to challenge on appeal the propriety of the denial of his suppression motion. M.R. Crim.P. 11(a)(2).

On appeal, Tarantino contends that the warrant was invalid and that the good faith exception to the warrant requirement was inapplicable on the facts of this case. Moreover, he suggests that his would be an appropriate case for the adoption of an exclusionary rule pursuant to the Maine Constitution, citing Me. Const. art. I, § 5. The State counters that, even if the defendant's arguments are correct, the automobile exception to the warrant requirement legitimized the search. We agree with the State.

■ The automobile exception to the warrant requirement was first enunciated in *Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 283–84, 69 L.Ed. 543 (1925). *Carroll* and its progeny have held that searches of automobiles, unlike searches of fixed structures, do not require a warrant where impracticable, both because a vehicle can be quickly moved and because there is a lesser expectation of privacy in an automobile. Earlier Maine cases that addressed this requirement emphasized that the automobile exception required a showing both that "the searching officers [had] probable cause to believe that [the automobile] contain[ed] contraband *and* exigent circumstances exist[ed] preventing the officers from getting a warrant in time." *State v. Bouchles*, 457 A.2d 798, 799 (Me.1983), (emphasis in original). The United States Supreme Court, however, appears to have rejected the latter requirement in *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). In *Carney*, the Court reasoned that because there is a lesser expectation of privacy resulting from "the pervasive

**1098**

regulation of vehicles capable of traveling on the public highways ... the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met." *Id.* at 392, 105 S.Ct. at 2069–70. *See also United States v. Panitz,* 907 F.2d 1267, 1272 (1st Cir.1990), stating that "the existence of probable cause justifies a warrantless seizure and reasonable search of a motor vehicle ... whether or not exigent circumstances prevailed at either the time of the seizure or the time of the search." *Accord, U.S. v. Vasquez,* 858 F.2d 1387 (9th Cir.1988); *U.S. v. Bagley,* 772 F.2d 482 (9th Cir.1985). Thus, even if we assume that the warrant to search Tarantino's car was facially invalid and that the good faith exception did not apply to the instant situation, the lack of exigency in carrying out the search did not require the officers to possess a valid search warrant as long as there was probable cause to conduct the search. *See generally,* 3 W. LaFave, *Search and Seizure,* § 7.2(b) (1987).

 Police officers have probable cause to search vehicles or other containers "when the officers' personal knowledge of facts and circumstances, in combination with any reasonably trustworthy information conveyed to them, would warrant a prudent person to believe that the container seized holds either contraband or evidence of a crime." *State v. Snow,* 527 A.2d 750, 753 (Me.1987). In the instant case, we conclude that Officer Bickford acted prudently in finding that, based on all the information in his possession, there was probable cause to believe that the automobile contained contraband. Although Bickford's tips from citizens were somewhat sketchy and by themselves might not have been enough to justify a warrantless search, the aggregate of these tips and the corroborating information of the officers who encountered Tarantino on Vinalhaven Island were enough to create probable cause to justify the search of Tarantino's vehicle.

 We also reject Tarantino's suggestion that we use this case to announce the existence of a state exclusionary rule based on article I, section 5 of the Maine Constitution and on these facts to extend greater protection under our constitution than that required under the federal constitution.

The entry is:

Judgments affirmed.

All concurring.