**STATE of Maine**

v.

**Joseph IZZO.**

Supreme Judicial Court of Maine.

Argued Feb. 5, 1993.
Decided April 26, 1993.

David W. Crook, Dist. Atty., Evert N. Fowle, (orally), Asst. Dist. Atty., Skowhegan, for the State.

Judith H. Mizner, (orally), Newburyport, Christopher L. Mann, Law Offices of Marshall Stern, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

Joseph Izzo appeals from the Superior Court (Somerset County, *Chandler, J.*) judgments, entered on conditional guilty pleas, convicting him of the crimes of unlawful furnishing and possession of scheduled drugs. *See* 17–A M.R.S.A. §§ 1106, 1107 (1983 & Supp.1992). Izzo contends that the trial court erred in denying his motion to suppress all evidence obtained pursuant to various law enforcement searches. We affirm the judgments of the Superior Court.

### Factual Background

Pittsfield police officer Peter Boucher was on routine patrol during the early morning hours of October 3, 1991 when he observed a vehicle, driven by Izzo and carrying one passenger, Timothy Stutz, pull into a closed gasoline station. Officer Boucher pulled into the station, beside Izzo's vehicle, to offer assistance. Izzo was somewhat slow, however, in rolling down the vehicle's window. This delay made Boucher suspicious. Boucher told Izzo where he could find an open gasoline station. As Izzo's vehicle left the station, Boucher noticed that the vehicle had a broken tail lens and an inoperable plate light. Consequently, in accord with his normal practice, Boucher stopped Izzo's vehicle. In the process of stopping Izzo's vehicle, Boucher observed Izzo make an "extra movement" with his arm in the front seat.

On Boucher's request, Izzo produced a New York driver's license and registration.

At this time, Boucher noticed approximately three or four empty beer bottles in the back seat. As a result, Boucher asked Izzo to get out of the car and go sit in the police cruiser. There was an odor of alcohol coming from the vehicle, odor on Izzo's breath, and Izzo's eyes were "watery and bloodshot."

Boucher went over to the passenger in Izzo's car and asked him for personal identification. The passenger, Stutz, had none. Boucher noticed that Stutz was wearing a waist bag and asked if there was anything in the bag to identify him. Stutz took some business cards out of the front compartment of the waist bag. Boucher asked what was in another zippered compartment. Stutz took off the waist bag, handed it to Boucher, and stated that it contained about an ounce of marijuana.

Boucher brought Stutz back to the police cruiser and informed Izzo that he was going to search through the compartment area of his car because he "located some marijuana on his passenger." In the course of that search, Boucher found a pipe on the car seat containing marijuana residue, four bags of marijuana in Izzo's jacket pocket, roaches in the ashtray, and another baggie containing marijuana in the front compartment area of the car.

Boucher went back to the cruiser and asked Izzo if he had marijuana on his person and if he would empty his pockets. Izzo pulled out "a small brown container that had some marijuana in it, along with a pipe, and he pulled out a large wad of cash." Boucher asked Izzo if he would sign a consent form permitting a search of the trunk. Boucher told Izzo that if Izzo did not consent to the search, Boucher would impound the car and get a search warrant. Before consenting to the search of his trunk, Izzo was permitted to speak privately with the passenger, Stutz. Izzo told Boucher that "some acid" might be in the trunk because, as Izzo stated, "I was coming up to Crystal and we have some friends up there and [my girlfriend] might have put it in for me to give to them." Izzo signed the consent form,[1] which was witnessed by Boucher and Newport Officer Raymond at 3:00 a.m., approximately fifty minutes after the initial stop.

State Police Trooper Robert Williams then arrived on the scene and, while his dog was sniffing the interior compartment of the car, Boucher searched the trunk. Inside a suitcase located in the trunk, Boucher found forty-seven hits of L.S.D., and a 12–gauge pump shotgun. During the time the search was being carried out, "[Izzo] was quite pleased with the way he was being treated. He said if he was in New York they—Him and his friend, Mr. Stutz, made the same statement: that they would be face down on the turf with just finding that little civil amount of marijuana." At no time were either Izzo or Stutz handcuffed. Rather, "they were standing there watching us, walking around." At the police station, Trooper Williams spoke to Izzo in the Chief's office, read him a *Miranda* [2] warning, and in Boucher's words, "just didn't really question him, but more of a conversation—type of a thing."

### Procedural History

Izzo was indicted by a Somerset County grand jury on November 5, 1991, for ag-

---

**1.** The consent form provided:

I, Joseph W. Izzo, have been informed by Pierre Boucher and Glenn Raymond who made proper identification as (an) authorized law enforcement officer(s) of the Pittsfield PD and Newport PD of my CONSTITUTIONAL RIGHT not to have a search made of the premises and property owned by me and/or under my care, custody and control, without a search warrant. Knowing of my lawful right to refuse to consent to such a search, I willingly give my permission to the above named officer(s) to conduct a complete search of the premises and property, including all buildings and vehicles, both inside and outside of the property located at Park St. Pittsfield, ME, N.Y.P.C. BWB 258

The above said officer(s) further have my permission to take from my premises and property, any letters, papers, materials or any other property or things which they desire as evidence for criminal prosecution in the case or cases under investigation. This written permission to search without a search warrant is given by me to the above officer(s) voluntarily and without any threats or promises of any kind, at 0300 A.M. on this 3 day of October 1991, at Pittsfield, ME.

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)

gravated furnishing of a schedule W drug, furnishing of a schedule W drug, and possession of a schedule W drug. *See* 17–A M.R.S.A. §§ 1106, 1107 (1983 & Supp.1992). Izzo subsequently moved to suppress all evidence obtained, and any statements made, that were derived from the various searches and interviews conducted on October 3, 1991. A hearing was held in the Superior Court (Somerset County, *Chandler, J.*), after which Izzo's motion to suppress was denied. Izzo subsequently entered conditional guilty pleas to the charges of furnishing scheduled drugs and possession of scheduled drugs. The charge of aggravated furnishing of a scheduled drug was dismissed. This timely appeal followed.

## I.

### *Validity of the Stop*

Izzo first challenges the legality of the initial stop, asserting that the stop of his vehicle was an unconstitutional pretext stop in violation of the fourth amendment to the United States Constitution, made applicable to the states through the fourteenth amendment. "We review the [trial] court's determination regarding the validity of a·traffic stop for clear error." *State v. Mehuren*, 594 A.2d 1073, 1075 (Me.1991).

 The fourth amendment provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. "In order to make a valid traffic stop an officer must have a reasonable articulable suspicion that a criminal offense is being or has been committed or that legitimate safety reasons warrant the stop." *State v. Mehuren*, 594 A.2d at 1075. *See also Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "A mere 'hunch' will not justify an investigatory stop ... and the inferences that cause an investigating officer to pursue an inquiry must be reasonable ones." *State v. Laplante*, 534 A.2d 959, 962 (Me.1987) (citations omitted). Moreover, the officer's reason for stopping a vehicle must not be a mere pretext or ruse, or otherwise consti-

tute a form of subterfuge. *See State v. Pinkham*, 565 A.2d 318, 320 (Me.1989).

██ Specifically,

[a] pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop. The classic example ... occurs when an officer stops a driver for a minor traffic violation in order to investigate a hunch that the driver is engaged in ·illegal drug activity.

*United States v. Guzman*, 864 F.2d 1512, 1515 (10th Cir.1988).

In the present case, Izzo contends that Boucher used the broken tail lens and inoperable plate light on Izzo's vehicle as an excuse to investigate for other criminal activity.

The generally accepted standard used to determine whether a specific police intrusion amounts to a mere pretext is an objective one. That standard has been stated as follows:

if the police stop X's car for minor offense A, and they "subjectively hoped to discover contraband during the stop" so as to establish serious offense B, the stop is nonetheless lawful if "a reasonable officer *would* have made the stop in the absence of the invalid purpose."

1 W. LaFave, *Search and Seizure* § 1.4(e), at 17 (2d ed. Supp.1992) (footnote omitted).

 Officer Boucher testified that he routinely stops vehicles that have a broken tail lens or an inoperable plate light. In compliance with the requirement of M.R.Crim.P. 41A to make findings of fact, the Superior Court found that Officer Boucher, lacking his suspicion, would have stopped Izzo's vehicle due to the comparatively minor vehicular defects. Despite the minor nature of these violations, and regardless of his subjective intent, Boucher's stop of Izzo's vehicle was found to be lawful. *See State v. Pinkham*, 565 A.2d at 319–20; *see also* 29 M.R.S.A. §§ 2503, 2508 (Pamph.1992). Implicit in the court's finding that the stop was lawful is a finding

that Boucher's actions were those of a reasonable officer. In the absence of a request for further findings of fact, we assume that the trial court applied the appropriate standard. *See State v. Powell*, 591 A.2d 1306, 1308 n. 4 (Me.1991) (the absence of findings of fact in the record on appeal allows us to assume the suppression court found all facts necessary to support its ruling on the motion to suppress). Even though the obligation of the court under Rule 41A to provide findings of fact and conclusions of law is "absolute rather than conditional," the party responsible for an adequate record, the appellant, "has the burden to request the court to make findings if none are made, or to expand on inadequate findings in order for the record to be meaningful for appellate review." *State v. Kneeland*, 552 A.2d 4, 6 (Me.1988) (citations omitted). The Superior Court's finding on that issue, therefore, was not clearly erroneous. *See State v. Mehuren*, 594 A.2d at 1075.

■ Moreover, contrary to Izzo's contention, Officer Boucher did not exceed the scope of a permissible traffic stop by asking Izzo to sit in the police cruiser while he requested identification from the passenger. Just prior to Izzo's leaving his vehicle, Boucher became aware of facts that supported a reasonable suspicion that Izzo was operating under the influence of alcohol. He observed several beer bottles, at that time apparently empty, in the back seat of the vehicle; noticed Izzo's eyes appeared bloodshot and watery; and he smelled alcohol in the vehicle and on Izzo's breath as he was conducting a license and registration check. These observations, in conjunction with Boucher's earlier suspicions that Izzo had acted nervously during their initial conversation at the closed gasoline station, and after the Izzo vehicle was stopped, constitute *"specific* and *articulable facts"* that reasonably warranted Boucher's suspicion that Izzo was operating under the influence. *State v. McKenzie*, 440 A.2d 1072, 1075 (Me.1982) (emphasis in original).

In *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the United States Supreme Court held that a police officer's ordering of a driver to get out of his car, after the vehicle was lawfully stopped for a traffic violation, was not violative of the fourth amendment's proscription against unreasonable searches and seizures, despite the officer's failure to suspect any foul play on the part of the individual driver. *Id.* at 111 n. 6, 98 S.Ct. at 333 n. 6. Officer Boucher, in the present case, did, in fact, have reason to suspect Izzo of driving under the influence. That suspicion was not unreasonable pursuant to the principles of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Accordingly, Boucher was permitted to order Izzo out of the vehicle, and his further request that Izzo remain in the police cruiser does not turn the officer's justifiable conduct into a fourth amendment violation. Neither his innocuous questioning of Stutz, nor the fact that Stutz voluntarily handed over his waist bag, containing approximately one ounce of marijuana, changes the result. We conclude that, in light of all of the information known to Officer Boucher at the time of the stop, the court's determination that his actions were reasonable and did not violate Izzo's fourth amendment rights was not clearly erroneous.

## II.

### Search of the Vehicle

Izzo next contends that the officer lacked the requisite probable cause to search the vehicle after discovering the marijuana in Stutz's waist bag. This search uncovered a pipe with marijuana residue, roaches in the ashtray, and a few other bags of marijuana, some of which were discovered in the pockets of Izzo's jacket found in the car.

■ This search involves the automobile exception to the warrant requirement, first recognized by the Supreme Court in *Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 283, 69 L.Ed. 543 (1925). *See State v. Tarantino*, 587 A.2d 1095, 1097 (Me.1991) (citing *Carroll.*) Under current fourth amendment principles, "the existence of probable cause justifies a warrantless seizure and reasonable search of a

motor vehicle ... whether or not exigent circumstances prevailed at either the time of the seizure or the time of the search." *United States v. Panitz*, 907 F.2d 1267, 1272 (1st Cir.1990). "Police officers have probable cause to search vehicles or other containers 'when the officers' personal knowledge of facts and circumstances, in combination with any reasonably trustworthy information conveyed to them, would warrant a prudent person to believe that the container seized holds either contraband or evidence of a crime.' " *State v. Tarantino*, 587 A.2d at 1098 (quoting *State v. Snow*, 527 A.2d 750, 753 (Me.1987)).

■ Based on the present record, we cannot conclude that the trial court erred in finding the existence of probable cause. Officer Boucher observed two individuals traveling together sometime after 2 a.m. The driver appeared suspiciously nervous, and had bloodshot and watery eyes. Odors of alcohol emanated from the vehicle. The driver's travelling companion, devoid of any identification, was in possession of marijuana. In these circumstances, it was not unreasonable for Officer Boucher to believe that the remainder of the vehicle contained marijuana. An officer's warrantless search of an automobile must, just prior to the search, be supported by a reasonable belief "that contraband or evidence of a crime are located in the place to be searched." *State v. Tomah*, 586 A.2d 1267, 1269 (Me.1991). We hold that, given this particular set of facts, the trial court did not err in concluding that Officer Boucher's warrantless search of Izzo's vehicle was supported by probable cause.

■ Izzo further argues that the search of his vehicle's trunk, conducted after the search of the vehicle's interior, was improper. The search of the trunk, conducted with Izzo's consent, uncovered a significant amount of L.S.D. and a 12–gauge pump shotgun. Izzo now claims his consent was invalid because it was coerced and, therefore, not voluntarily given. We need not address Izzo's argument, however, for Izzo's consent was unnecessary. Probable cause to search the entire vehicle existed. Specifically, probable cause entitles the po-lice to search any containers within the vehicle that might reasonably contain the objects of the search. *United States v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982); *State v. Patten*, 457 A.2d 806, 811 (Me.1983). Since marijuana could have been concealed in the trunk, Boucher was permitted to search the trunk. This conclusion is further supported by Izzo's voluntary statement that "[t]here is a possibility that I might have some acid ... in my suitcase...." Therefore, we conclude that the search of the vehicle's trunk was proper.

### III.

### *Miranda*

Izzo contends that the trial court erred in not suppressing all statements made during Officer Boucher's roadside investigation. Specifically, Izzo maintains that he made statements, while in police custody, and before he had been given warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The court concluded that Izzo's statements were voluntarily made in a noncustodial setting and denied Izzo's motion to suppress.

■ "*Miranda* warnings are mandated only where a suspect is both in custody and subjected to interrogation as these terms are understood under the *Miranda* doctrine." *State v. Philbrick*, 436 A.2d 844, 848 (Me.1981) (citations omitted). "[T]he trial court's finding of no custodial interrogation will be upheld if the record provides rational support for that determination." *State v. Pinkham*, 556 A.2d 658, 659 (Me.1989) (citing *State v. Thibodeau*, 496 A.2d 635, 638 (Me.1985), *cert. denied* 475 U.S. 1141, 106 S.Ct. 1793, 90 L.Ed.2d 338 (1986)), *cert. denied*, 493 U.S. 855, 110 S.Ct. 160, 107 L.Ed.2d 117 (1989). The trial court's denial, in the present case, of Izzo's motion to suppress is supported by the record. During the course of the roadside investigation, Izzo was free to walk around the area, to walk into the adjoining woods, and talk with Stutz. *See State v. Hewes*, 589 A.2d 460, 461 (Me.1991) (custody exists

when circumstances support reasonable belief freedom of action curtailed to degree associated with formal arrest). The court's determination that Izzo voluntarily made the statements is also supported by the record. Police officers are "under no obligation to stop a suspect from making a voluntary statement which in no way is the product of police interrogation." *State v. Peabody*, 320 A.2d 242, 245 (Me.1974) (citing *State v. Lafferty*, 309 A.2d 647 (Me. 1973)). Accordingly, the court's refusal to suppress Izzo's statements was not error.

The entry is:

Judgments affirmed.

All concurring.