Lisa McPHERSON, Plaintiff,

v.

Paul AUGER, Ronald Dugre, and Town of Sanford, Defendants.

Civ. No. 93–208–P–C.

United States District Court,
D. Maine.

Jan. 6, 1994.

Richard Hewes, Hewes & Nye, Portland, ME, for plaintiff.

Daniel Rapaport, Edward R. Benjamin, Jr., Preti, Flaherty, Beliveau & Pachios, Portland, ME, for defendants.

*MEMORANDUM OF DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

GENE CARTER, Chief Judge.

This case arises out of a stop and warrantless arrest of Plaintiff Lisa McPherson by Defendant police officer, Paul Auger, for traffic violations. Plaintiff advances claims pursuant to section 1983 against Defendant Auger; his supervisor and Chief of Police of the Town of Sanford, Defendant Ronald Dugre; and the Town of Sanford for violations of her Fourth and Fourteenth Amendment rights in effecting a traffic stop and arrest without probable cause and in using excessive force against her in carrying out

the arrest.[1]  42 U.S.C. § 1983.  Plaintiff's Complaint at Count I (Docket 1a) ("Complaint").  Plaintiff also advances a number of Maine state law claims, including constitutional violations and various statutory violations in effecting the warrantless arrest. Complaint at Counts II, III, IV, & V.  Defendants have moved for summary judgment on all counts.  This Court will grant summary judgment to the Town of Sanford on all claims and to the police officers on all claims except the section 1983 claim related to Defendant Augers' alleged use of excessive force in handcuffing Plaintiff's wrists too tightly, causing injury, because genuine issues of material fact are in dispute precluding summary judgment on this issue.

## I.  FACTS

The undisputed facts, stated in the light most favorable to Plaintiff, are as follows. On the evening of July 27, 1992, Plaintiff Lisa McPherson was driving a Bronco truck from a store parking lot onto Route 109 in Sanford, Maine.  The truck began to stall as Plaintiff turned onto Route 109, so she pushed down on the accelerator and let out the clutch as she made the turn, causing the tires to squeal loudly and leaving about 40 feet of rubber marks on the roadway.  Deposition of Lisa McPherson at 24–25 & 30 ("Plaintiff Deposition") and Affidavit of Paul Auger, Exhibit A at ¶ 3, attached to Defendants' Statement of Uncontroverted Facts (Docket No. 9) ("Auger Affidavit").  Defendant Police Officer Paul Auger, who observed these actions, pursued Plaintiff in his patrol car, stopped the vehicle and approached Plaintiff's car, telling her that she had created a "smoke show" and asking for her license, registration, and proof of insurance. Plaintiff, who was unable to locate these documents, began crying, hitting her fists on the steering wheel, and stomping her feet on the floor of the vehicle.  Plaintiff Deposition at 32–34 & 55 and Auger Affidavit at ¶¶ 4–5.

Plaintiff asked the officer for permission to get out of her car because she was feeling sick and in the process, she hit Defendant with the car door.  Plaintiff Deposition at 41 and Auger Affidavit at ¶ 6.  She eventually regained her composure enough to tell Defendant her name, and Defendant was then able to confirm her license and her car registration.  At some point, Defendant told Plaintiff that she owed him an apology, without specifying that he was referring to having been hit with the car door, and Plaintiff replied that she didn't owe him anything. Plaintiff Deposition at 53–55.  Defendant then presented Plaintiff with traffic tickets for making unnecessary noise with the vehicle's tires, failure to provide proof of insurance, and assault.  29 M.R.S.A. §§ 1362 and 780 and 17–A M.R.S.A. § 207, respectively.

When Plaintiff refused to sign the tickets, Defendant told her that she was under arrest pursuant to section 2300(5) of Maine's traffic regulations.  29 M.R.S.A. § 2300(5).  In effecting the arrest, Defendant handcuffed Plaintiff's wrists behind her back and double-locked the cuffs to prevent them from tightening, in accordance with the standard operating procedures of the Sanford Police Department.  Auger Affidavit at ¶¶ 10–13. Plaintiff, who was crying throughout the ordeal, got into the back seat of the police car and, soon afterwards, began complaining that the right handcuff was too tight.  Plaintiff Deposition at 60–61.  After a 15–minute ride in the police car, Plaintiff arrived at the Sanford Police Station where she did not complain further about any injuries suffered from the handcuffs and did not request medi-

---

1.  Plaintiff's Complaint also originally alleged violations of her Fifth, Sixth, Eighth, and Ninth Amendment rights (Docket No. 1a) but she has limited her arguments to the Fourth and Fourteenth Amendments in opposing this Motion for Summary Judgment.  Since the events at issue all involve the stop and seizure of Plaintiff, the alleged violations are properly assessed under the Fourth and Fourteenth Amendments.  *See Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that claims that law enforcement officials have used excessive force in effecting an arrest, investigatory stop, or other "seizure" are properly analyzed under the Fourth Amendment's "objective reasonableness" standard).

Plaintiff attempts to raise an additional claim of malicious prosecution pursuant to section 1983 in her Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Docket No. 14) at 9–10.  As this claim was not raised in Plaintiff's Complaint nor was any motion filed to amend the Complaint, this claim is not properly before the Court.

cal assistance.[2] *Id.* at 62–64. Plaintiff, however, missed several days of work immediately after the arrest because of soreness in her wrist and went to see a nurse practitioner, a physical therapist, and a neurologist over the next month-and-a-half to deal with her alleged injury. *Id.* at 81–90. Her neurologist, Dr. Leschey, has opined that she suffered "a compression of the radial nerve where it is superficial to the skin from the incident." He reports that nerve conduction studies on her arm were normal, and that her prognosis for full recovery is excellent. *Id.* at 93–95.

## II. ANALYSIS

### A. State Law Claims

■ Plaintiff asserts that Defendants are liable for various violations of the State of Maine's Constitution and statutes for the manner in which Defendant Auger effected Plaintiff's arrest. This Court need not examine the merits of these claims because the Court finds that all Defendants qualify for immunity from suit under the Maine Tort Claims Act. 14 M.R.S.A. §§ 8101 *et seq.* The Town of Sanford is immune from suit under section 8103, which grants all governmental entities immunity from suit on tort claims seeking recovery of damages, except for four narrow exceptions to immunity, detailed in section 8104–A, which are not applicable to the facts of this case.[3] Plaintiff

attempts to argue that the Town's participation in the Maine Municipal Association Property & Casualty Pool serves to waive the Town's immunity under section 8116.[4] However, the Town of Sanford's policy certificate as well as affidavits submitted by Defendants make clear that the insurance policy is limited to covering "those areas for which governmental immunity has been expressly waived by 14 M.R.S.A. 8104–A" and "shall not be deemed a waiver of any immunities ... available under the Maine Tort Claims Act." Maine Municipal Association Property & Casualty Pool Member Coverage Certificate and Affidavit of Pamela Cheeseman at ¶ 4 (Defendants' Exhibit L) and Affidavit of John Webb (Defendants' Exhibit M) attached to Defendants' Statement of Uncontroverted Facts (Docket No. 9). These facts are not disputed and are sufficient, as a matter of law, to establish the Town's immunity from suit under the Maine Tort Claims Act.

This Court also finds that Defendants Auger and Dugre are entitled to discretionary immunity provided by the Maine Tort Claims Act. 14 M.R.S.A. § 8111.[5] Maine law provides absolute immunity for a police officer so long as the officer's conduct does not "clearly exceed, as a matter of law, the scope of any discretion he could have possessed in his official capacity as a police officer." *Pol-*

---

2. The facts as to what happened after Plaintiff complained of tight handcuffs are in dispute. Plaintiff alleges that Defendant did not loosen her right handcuff. Plaintiff Deposition at 60–61. Defendant, on the other hand, alleges that he loosened Plaintiff's right handcuff soon after her initial complaint. Auger Affidavit at ¶ 14.

3. Section 8104–A lists four exceptions to governmental immunity from tort suits for claims that fall in the areas of (1) "[o]wnership; maintenance or use of vehicles, machinery and equipment," (2) "[p]ublic buildings," (3) "[d]ischarge of pollutants," and (4) "[r]oad construction, street cleaning or repair." 14 M.R.S.A. § 8104–A.

4. Section 8116 provides in relevant part: "If the insurance provides coverage in areas where the governmental entity is immune, the governmental entity shall be liable in those substantive areas but only to the limits of the insurance coverage."

5. Section 8111 provides in relevant part:

1. Immunity. Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for the following:

....

C. Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid.

....

The absolute immunity provided by paragraph C shall be applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question, regardless of whether the exercise of discretion is specifically authorized by statute, charter, ordinance, order, resolution, rule or resolve and shall be available to all governmental employees, including police officers ... who are required to exercise judgment or discretion in performing their official duties.

14 M.R.S.A. § 8111(1).

ley v. Atwell, 581 A.2d 410, 414 (Me.1990). In determining whether an officer is carrying out a discretionary function, Maine courts focus on whether the officer is required to use his or her judgment while acting in furtherance of a departmental policy, law, or legislatively imposed duty. *Moore v. Lewiston*, 596 A.2d 612, 616 (Me.1991). Making a warrantless arrest is a discretionary function. *Leach v. Betters*, 599 A.2d 424 (Me.1991).

■ The question then becomes whether Defendant Auger clearly exceeded the scope of his discretion in stopping and carrying out the arrest of Plaintiff. The undisputed facts in this case establish that Officer Auger acted within the scope of his discretion when he made an investigatory stop of Plaintiff's car because his affidavit reasonably articulates a suspicion that she had committed the traffic offense of making unnecessary noise with the vehicle's tires. Auger Affidavit at ¶ 3. *See also State v. Izzo*, 623 A.2d 1277, 1280–81 (Me.1993) (discussing the standard for making a valid traffic stop in accordance with Maine law and the Fourth Amendment of the United States Constitution). Officer Auger again acted within his discretion when he arrested Plaintiff without a warrant because he had probable cause to believe that Plaintiff had committed the criminal offense of refusing to sign traffic tickets within his presence. *Id.* at 1281–82 (indicating that probable cause exists when an officer's " 'personal knowledge of facts and circumstances, in combination with any reasonably trustworthy information conveyed to them, would warrant a prudent person to believe' " that the individual to be apprehended had committed a crime) (citation omitted).

■ Further, Officer Auger has the discretion under Maine law to use a reasonable degree of force when making an arrest, 17–A M.R.S.A. § 107, and is entitled to immunity for his actions while making an arrest so long as he avoids "wanton or oppressive" conduct. *Leach v. Betters*, 599 A.2d 424, 426 (Me. 1991). As the facts in the *Leach* case demonstrate, Maine courts are hesitant to second-guess the judgment of police officers acting within the line of duty and place a heavy burden on plaintiffs to demonstrate conduct falling well outside an officer's discretionary

duties when seeking civil damages in tort suits. *See also Maguire v. Municipality of Old Orchard Beach*, 783 F.Supp. 1475, 1487 (D.Me.1992) (holding that a warrantless impoundment of a car and warrantless seizure of an individual, "[e]ven if Defendants' conduct is shown to be deliberately indifferent or reckless" will not support a conclusion for purposes of a motion for summary judgment that such conduct " 'clearly exceeded, as a matter of law, any discretion [they] could have possessed in [their] official capacity as police officers' ") (citation omitted). While Plaintiff in this case makes conclusory allegations that Defendant's conduct in not loosening her right handcuff amounted to wanton or oppressive conduct, this Court has little difficulty in deciding that the undisputed facts establish that Defendant Auger was acting within the scope of his discretion under Maine law in carrying out Plaintiff's arrest, and he is thus entitled to immunity, as a matter of law, under the Maine Tort Claims Act.

■ Similarly, this Court finds that Defendant Dugre was acting within his discretion under Maine law when he did not take any corrective action in response to prior complaints that Defendant Auger applied handcuffs too tightly in effecting arrests. Plaintiff's evidence of one or two such prior complaints, included in Defendant Auger's police reports, is insufficient to establish a genuine issue of fact that would allow a jury to find that Defendant Dugre's failure to take notice or corrective action *clearly exceeded*, "as a matter of law, the scope of any discretion he could have possessed in his official capacity as a police officer." *Polley*, 581 A.2d at 414. *See* Deposition of Defendant Auger at 27–29. Thus, Defendant Dugre is also entitled to immunity from Plaintiff's state-law claims pursuant to section 8111(1) of the Maine Tort Claims Act.

### B. Federal Claims Pursuant to 42 U.S.C. Section 1983

■ As detailed in the previous section, the undisputed facts in this case clearly establish that Defendant Auger had a reasonable articulable suspicion that Plaintiff's squealing of her vehicle's tires was a violation

of a state traffic regulation prohibiting unnecessary noise and that he acted lawfully in stopping Plaintiff's vehicle. *See* 29 M.R.S.A. § 1362 (prohibiting unnecessary noise of vehicle tires); *See also Izzo,* 623 A.2d at 1280–81. Further, Defendant Auger had probable cause to arrest Plaintiff because she committed a criminal offense in his presence by refusing to sign the traffic tickets, in violation of section 2300(5). 29 M.R.S.A. § 2300(5). These undisputed facts render hollow Plaintiff's allegations that Defendant stopped her unlawfully and effected her arrest without a warrant or probable cause. Complaint at ¶ 6. Clearly, "a reasonable officer could have believed" that Defendant's stop and warrantless arrest of Plaintiff were lawful "in light of clearly established law and the information" that Defendant possessed. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (establishing the standard for assessing whether an officer is shielded from civil liability suits by qualified immunity). Hence, Defendant Auger is protected by qualified immunity from Plaintiff's civil damages suit. Because the facts do not indicate that any constitutional violations occurred with respect to the stop and arrest of Plaintiff, this Court will grant summary judgment to all Defendants on these claims of Fourth and Fourteenth Amendment violations pursuant to section 1983. 42 U.S.C. § 1983.

■ This Court will further grant summary judgment to the Town of Sanford on Plaintiff's claim that the Town's policy of handcuffing all arrestees, regardless of the threat that they pose, constitutes an unreasonable seizure in violation of the Fourth Amendment. Complaint at ¶ 18. Plaintiff has pointed to no case law or set of facts to indicate that the Town's uniform handcuffing policy reflects an excessive use of force, given that the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Plaintiff has offered no evidence to suggest that the policy is anything other than a reasonable balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amend-

ment interests' against the countervailing government interests at stake" such as safety of the Town's officers. *Id.* (citations omitted). Further, Plaintiff has clearly not satisfied her burden of overcoming the Town's immunity from suit by showing that the handcuffing policy reflects a "deliberate indifference" to the constitutional rights of its inhabitants and was the "moving force" behind the alleged constitutional violation. *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989); *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); and *Foley v. City of Lowell,* 948 F.2d 10, 14 (1st Cir. 1991).

■ This Court will grant summary judgment to the Town of Sanford but will deny summary judgment to Defendants Auger and Dugre on the remaining claim under section 1983 that Defendant Auger used excessive force in handcuffing Plaintiff's wrists too tightly, thereby causing injury. The Court will deny summary judgment to Defendants Auger and Dugre on this count because genuine issues of material fact are in dispute that preclude this Court from determining "whether the force used exceeded 'the … force … necessary' to effect the arrest from the perspective of an objectively reasonable officer at the scene". *Dean v. City of Worcester,* 924 F.2d 364, 367 (1st Cir.1990) (quoting *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). If a jury believes Plaintiff's version of events, it could determine that Defendant handcuffed Plaintiff's wrists too tightly and then refused to loosen the handcuffs despite verbal complaints and crying and that an objectively reasonable officer would not view such use of force as necessary. Further, genuine issues of material fact are in dispute with respect to whether Defendant Dugre failed to act in response to prior reports of Officer Auger's use of force in handcuffing that would render him liable as a supervisor.

■ This Court will grant summary judgment to Defendant Town of Sanford on the above-stated claim because Plaintiff has failed to demonstrate a failure to train on the

part of the municipality which operated as a cause of this officer's challenged conduct. The Town has presented evidence that Sanford police officers receive

> use of force training at least once per year. Use of force training generally includes the standard operating procedures for handcuffing arrestees. Sanford police officers are trained that all persons who are being arrested are to be handcuffed, without exception. The officers are also taught that an arrestee's hands are to be cuffed behind them, for the officer's safety. Sanford police officers are provided handcuffs which have a double locking mechanism. This mechanism prevents handcuffs from tightening further if pressure is placed on the outside of the handcuffs. Officers are taught to double lock the handcuffs to prevent further tightening of the handcuffs once the officer has selected the locking point which is appropriate in the individual case based upon the arrestee's wrist size.

Affidavit of Chief of Police Ronald Dugre, Defendants' Exhibit I at ¶¶ 4–5, attached to Defendants' Statement of Uncontroverted Facts (Docket No. 9).

Plaintiff has pointed to no evidence indicating that such procedures are inadequate nor has she met her burden of showing that any alleged failure to train reflects a "deliberate indifference" to the rights of the inhabitants, and that failure to train was the moving force behind the alleged constitutional deprivation. *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989).

Accordingly, it is *ORDERED* that Defendant Town of Sanford's Motion for Summary Judgment on all claims be, and it is hereby *GRANTED.* Further, it is *ORDERED* that Defendants Auger's and Dugre's Motion for Summary Judgment on all claims be, and it is hereby *GRANTED* except for the claim of excessive use of force in applying and maintaining handcuffs too tightly on Plaintiff in violation of the Fourth and Fourteenth Amendments pursuant to section 1983. It is *ORDERED* that Defendants Auger's and Dugre's Motion for Summary Judgment on

the above-described claim be, and it is hereby *DENIED.*