STATE OF MAINE

CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, ss.
CLERK'S OFFICE

2007 AUG -8 P 4: 16

SUPERIOR COURT
CRIMINAL ACTION
Docket No. CR-07-1048
WSC-CUM- 2 2 8007

STATE OF MAINE,

v.

DECISION AND ORDER

MARY E. CLARK,

Defendant.

FINDINGS

1.      On February 25, 2007 at 1:00 a.m. in Brunswick, defendant Mary Clark had just finished attending some type of gathering at a Main Street establishment where alcohol was served.

2.      Ms. Clark, who lives in Ft. Lauderdale and who works at Amherst College in Massachusetts, was driving a rental car with Connecticut plates.

3.      Ms. Clark backed out of the establishment's parking lot onto Main Street, which is four lanes at that spot, approximately 150 feet in front of Officer Gregory Mears, who was in his cruiser, on patrol, heading south on Maine Street.

4.      There was nothing illegal or dangerous or abnormal about the manner in which Ms. Clark backed out of the parking lot.

5.      Officer Mears pulled into the passing lane, went around Ms. Clark's car and pulled over. He let Ms. Clark pass him. He decided to follow Ms. Clark to see if she did anything wrong. It was not clear why Officer Mears decided to follow Ms. Clark. Perhaps he knew alcohol was served at the establishment where she had been. Presumably, at 1:00 a.m., it was closing time.

6.      Ms. Clark turned onto Town Hall Place. She executed the turn properly.

7. Officer Mears followed Ms. Clark onto Town Hall Place, through a parking lot onto Cumberland Street, heading west. Ms. Clark executed this turn properly, as well.

8. Officer Mears followed Ms. Clark west on Cumberland Street and observed nothing unusual. There was no weaving or drifting or any other indicia of operating under the influence.

9. Ms. Clark drove to the intersection of Cumberland Street and Union Street without anything remarkable happening. Officer Mears continued to follow her.

10. Ms. Clark turned north on Cushing executing the turn in a proper manner without any indicia of being under the influence. Officer Mears continued to follow her, still waiting to see if she did anything wrong.

11. She stopped at the intersection of Cushing and Mill Street. By this time Officer Mears had followed Ms. Clark between one-half mile and perhaps a mile without incident.

12. Officer Mears testified that Ms. Clark stopped "longer than normal" at the stop sign at Cushing and Mill. Ms. Clark testified that she stopped at the stop sign for a few seconds because she was deciding whether to turn left or right to get back to her hotel. Asked to quantify what "longer than normal" meant, Officer Mears testified perhaps four seconds. I find nothing remarkable about an out of state vehicle stopping four seconds at a stop sign.

13. Ms. Clark turned left onto Mill Street (Rte. 1). There was no evidence of any oncoming traffic. Ms. Clark cut the turn a bit sharp across the yellow line but then moved immediately into the proper lane on Rte. 1. There was no indication that Ms. Clark traveled in the wrong lane heading west on Mill Street. At most, she cut across the yellow line into the proper lane a bit too sharply. Considering that there was no

2

oncoming traffic, I find nothing remarkable. Turning left across the yellow line into the proper driving lane is something that almost all drivers do on a daily basis when there is no oncoming traffic.

14. Officer Mears pulled out on Mill Street (Rte. 1) and continued to follow Ms. Clark.

15. Ms. Clark drove two- to three-tenths of a mile on Mill Street without incident as Officer Mears continued to follow her.

16. Ms. Clark approached an orange-striped area in the road. It was not raised in any way. It was four car lengths long. It was faded. (I draw this inference from the fact that it was repainted in the spring.) The evidence was unclear as to why the striped area was there.

17. Officer Mears testified that Ms. Clark drove across the striped area and continued on. Ms. Clark testified that she adjusted for the striped area and continued on. Officer Mears then activated his blue lights and eventually arrested Ms. Clark for operating under the influence.

19. Ms. Clark appeared to be an intelligent witness but she had been drinking that night so her credibility is suspect. Officer Mears has seven years on the force and was, of course, not drinking. However, he admitted that he was waiting for Ms. Clark to make a mistake. People who are looking for something to happen for a long period of time will often see what they want to see. They are not lying; they simply see what they want to see. For this reason, I find Officer Mears' testimony to be suspect as well. I am not satisfied that Ms. Clark crossed the painted line.

## DISCUSSION

The only issue in this case is whether there were grounds to stop Ms. Clark's car. Officer Mears does not claim to be making a safety stop or a stop to help a distressed

3

motorist or an equipment-warning stop or any other type of stop other than suspected criminal activity. *State v. Pinkham*, 565 A.2d 318, 319-20 (Me. 1989). Officer Mears did not claim that any particular piece of driving constituted a traffic violation. Therefore, the question is whether Officer Mears had suspicion of criminal conduct which is occurring and whether a person of reasonable caution would believe that criminal activity was taking place. *State v. Caron*, 534 A.2d 978, 979 (Me. 1987).

Presumably Officer Mears suspected criminal activity in the form of an OUI or he would not have stopped Ms. Clark. The question is whether his suspicion was reasonable. Because I am not satisfied how much, if any, that Ms. Clark drove over the striped portion of Mill Street, the issue becomes whether it was reasonable, taking the totality of the facts, to suspect Ms. Clark of operating under the influence when the only indication of abnormal operation in the space of a mile or more was a momentary, too sharp left turn from Cushing Street onto Mill Street when there was no oncoming traffic and a four second stop at the Cushing Street stop sign. I do not think it is reasonable to suspect that an out of state driver is driving under the influence when those two minor factors are weighed against upwards of a mile of flawless driving. Because I reach that conclusion, the clerk will make the following entry by reference:

Defendant's motion to suppress is granted.

DATED: August 8, 2007

_W. S. Brodrick_
William S. Brodrick
Active-Retired Justice, Superior Court

4