MAINE SUPREME JUDICIAL COURT                                Reporter of Decisions
Decision:      2015 ME 91
Docket:        Aro-14-452
Argued:        June 18, 2015
Decided:       July 23, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

## STATE OF MAINE

v.

## ERIC M. MARTIN

MEAD, J.

[¶1]  The State of Maine appeals from an order entered by the trial court (*Hunter, J.*) granting Eric M. Martin's motion to suppress as evidence illegal drugs seized from him by law enforcement officers after they stopped a vehicle in which he was a passenger.  The court found that the warrantless search of clothes that Martin was wearing violated the Fourth Amendment to the United States Constitution and article I, section 5 of the Maine Constitution.  The State asserts that the search was (1) justified by probable cause and the existence of exigent circumstances, (2) incident to a lawful arrest, and (3) subject to the application of the inevitable discovery exception to the exclusionary rule.  Because we agree that the search was justified by probable cause and that it was conducted under exigent circumstances, we vacate the suppression order.

## I. BACKGROUND

[¶2]  The State does not challenge the trial court's factual findings, which are supported by the record.  *See State v. Babb*, 2014 ME 129, ¶ 9, 104 A.3d 878 (stating that a suppression court's findings of fact are reviewed for clear error).  In July 2013, Maine Drug Enforcement Agency (MDEA) Special Agent Peter Johnson began investigating the importation of heroin and prescription pills into Maine from Detroit, Michigan.  A confidential informant (CI) who had previously provided information to MDEA set up a delivery of several hundred oxycodone pills with the CI's source, a man calling himself "Al."  The CI reported that Al had been coming to Maine monthly, sometimes armed; had stayed with the CI on occasion; and had sold the CI heroin and pills.  Al provided the CI with the cell phone number of "one of his boys" who he would be using as the deliveryman for the transaction; the number belonged to Ricci Wafford, who had at least two convictions for drug possession and who had been charged with carrying a concealed weapon.  Johnson obtained a warrant allowing him to track the location of Wafford's cell phone.

[¶3]  On August 2, the CI received a call telling him that the drugs were on their way; once Wafford was in Maine, officers were able to follow the cell phone north on Interstate 95.  At one point the CI received another call and was told that "they" had stopped at a convenience store to buy cigars and that "they were on

their way up," giving agents their first indication that Wafford might not be alone. When Special Agent Craig Holder began following Wafford's car in Aroostook County, about twelve minutes before Wafford was stopped, he saw two people in the vehicle. Just before the stop, the CI received a final phone call from Al, who said that "he had just received a phone call from his connection stating cops."

[¶4] Between five and ten police vehicles stopped Wafford's vehicle on I-95. Both men in Wafford's car were ordered out and handcuffed. Detective Ross McQuade of the Aroostook County Sheriff's Office patted the men down, first Wafford and then Martin. At the time that he conducted the pat-down search, McQuade did not know which of the two men was Wafford. McQuade had received information that the men might be armed and were likely transporting drugs, but he did not have an arrest warrant or a search warrant. He testified that in searching Martin for weapons and contraband he did not feel anything that could be a weapon, but "[i]n [Martin's] lower body region, towards the right side of his lower groin area, I felt something that appeared to be unnatural and thought that it was likely a plastic bag." He felt objects in the bag moving around but he did not know what they were.

[¶5] When McQuade was unable to locate the bag in Martin's pockets, he alerted MDEA Supervising Special Agent Shawn Gillen. Gillen, too, had received information from Agent Johnson that the men in the car were transporting drugs

4

and might be armed. When McQuade told Gillen that he thought Martin had "a baggy, or a bag, with something in it," Gillen pulled out the waistband of Martin's "extremely loose" shorts and underwear with his finger, then "reached in and grabbed the bag," which contained ninety-eight 30mg oxycodone pills. After Wafford and Martin were arrested, Gillen was notified by a deputy that another bag of fifty pills was found on the ground in the same area where McQuade had searched both men; the pills were the same kind taken from Martin.

[¶6]  Martin was indicted on one count of unlawful trafficking in scheduled drugs (Class B), 17-A M.R.S. § 1103(1-A)(A) (2014), and one count of illegal importation of scheduled drugs (Class C), 17-A M.R.S. § 1118(1), (2)(A) (2014). He moved to suppress the bag of pills seized by Gillen, asserting that Gillen had conducted an unreasonable warrantless search in violation of the Fourth Amendment and article I, section 5 of the Maine Constitution. Martin did not challenge the legality of either the stop or the initial pat-down. The court held an evidentiary hearing at which Johnson, McQuade, and Gillen testified. It granted the motion by written order, finding that "Agent Gillen's search of [Martin's] person exceeded the bounds of a valid protective search or justifiable search for contraband."

[¶7]  The State moved for reconsideration and for additional findings of fact and conclusions of law. The court denied the motion for additional factual

findings, but set out extensive additional legal reasoning in affirming its earlier suppression order. The State then filed a timely notice of appeal, followed by the written approval of the Attorney General pursuant to 15 M.R.S. 2115-A(5) (2014) and M.R. App. P. 21.

## II. DISCUSSION

[¶8] Because the trial court's factual findings are unchallenged, we review de novo only the court's "ultimate determination regarding suppression," and we will uphold that determination "if any reasonable view of the evidence supports the trial court's decision." *State v. Kierstead*, 2015 ME 45, ¶ 14, 114 A.3d 984 (quotation marks omitted). Although a search conducted without a warrant is presumed to be unreasonable under the Fourth Amendment, *see United States v. Tiru-Plaza*, 766 F.3d 111, 115 (1st Cir. 2014), a warrantless search is not unreasonable, and thus not unconstitutional, if "it is supported by probable cause and exigent circumstances exist requiring a prompt search without the delay occasioned by the need for a warrant." *State v. Michael M.*, 2001 ME 92, ¶ 6, 772 A.2d 1179 (quotation marks omitted).

[¶9] Regarding the first requirement, "[p]robable cause to search exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quotation marks omitted). In *Maryland v.*

6

*Pringle*, the United States Supreme Court discussed the probable cause standard extensively:

> The long-prevailing standard of probable cause protects citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime, while giving fair leeway for enforcing the law in the community's protection. On many occasions, we have reiterated that the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.

540 U.S. 366, 370-71 (2003) (alterations, citations, and quotation marks omitted).

[¶10] We recently discussed the probable cause standard as well, noting that it "is flexible and based on common sense. Although requiring more than mere suspicion, probable cause can be satisfied on less than the quantum of proof necessary to establish a fact by a fair preponderance of the evidence." *State v. Flint*, 2011 ME 20, ¶ 12, 12 A.3d 54 (citations omitted). "The information determining the existence of probable cause includes all the information known to the police," and "[t]he determination is based on an objective standard, not on whether the particular officer believed he had probable cause." *State v. Foy*, 662 A.2d 238, 240 (Me. 1995) (alteration and quotation marks omitted); *see State v. Libby*, 453 A.2d 481, 485 (Me. 1982). No single fact is viewed in isolation;

rather, each piece of information is "a factor in the totality of the circumstances." *Pringle*, 540 U.S. at 372 n.2.

[¶11]  Here, the Superior Court found that "the police investigation in this case provided a clear basis for probable cause to believe that there would be contraband in the vehicle or on the person of Mr. Wafford," and that, "[b]ased on these facts, the officers had a fair probability to suspect that drugs would be found with Mr. Wafford or in his car."  That finding is well supported by the record. Nevertheless, the court, citing, inter alia, *United States v. Di Re*, 332 U.S. 581 (1948), and *Ybarra v. Illinois*, 444 U.S. 85 (1979), found that the search of Martin was not supported by probable cause because there was no particularized evidence of his involvement in drug trafficking beyond his presence in Wafford's car.

[¶12]  The Supreme Court addressed this issue in *Pringle*.  In that case, a police officer stopped a car occupied by three men and found a large amount of rolled-up cash in the glove compartment and five bags of cocaine, which he discovered when he pulled down the back-seat armrest.  540 U.S. at 367-68.  When none of the vehicle's occupants offered any information about the drugs or the money, all three were arrested.  *Id.* at 368-69.  The Court found that the officer had probable cause to arrest Pringle, the front-seat passenger:

> We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus, a reasonable officer

could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly.

. . . .

[A] car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing. Here we think it was reasonable for the officer to infer a common enterprise among the three men. The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.

*Id.* at 372-73 (quotation marks omitted).

[¶13] The *Pringle* Court, saying that "Pringle's attempt to characterize this case as a guilt-by-association case is unavailing," distinguished the two cases relied on by the Superior Court, *Ybarra* and *Di Re*, reasoning that in *Ybarra* the challenged search was of a customer who happened to be present in a public tavern, not a small automobile; and in *Di Re* the challenged search was of the front-seat passenger after the government informer in the rear seat singled out the driver as the sole guilty party. *Id.* at 372-374.

[¶14] *Pringle* controls the result here. Given the facts that it found, the trial court's probable cause finding concerning Wafford's car extends to Martin, who travelled in the car being driven to Maine for the reported purpose of delivering illegal drugs. Gillen therefore had probable cause to conduct the challenged search of the clothing Martin was wearing, particularly after McQuade first detected a bag

with objects moving inside—objects that were entirely consistent with the pills that officers had reason to suspect were being illegally trafficked and were therefore evidence of a crime.[1]

[¶15] Because we conclude that the trial court correctly found probable cause to believe that evidence of drug trafficking would be found on Wafford's person or in his vehicle, and therefore officers had probable cause to search Martin, we turn to the second question of whether the warrantless search was also justified by the existence of exigent circumstances. *See Michael M.*, 2001 ME 92, ¶ 6, 772 A.2d 1179; *State v. Bilynsky*, 2007 ME 107, ¶ 26, 932 A.2d 1169. "Exigent circumstances exist when there is a compelling need to conduct a search and insufficient time in which to secure a warrant." *Bilynsky*, 2007 ME 107, ¶ 26, 932 A.2d 1169 (quotation marks omitted). The determination "is inherently fact-specific." *Id.* ¶ 30.

[¶16] In *State v. Smith*, we approved a warrantless search of the defendant's jacket pocket once the officer had probable cause to believe that he would find

---

[1] *See also United States v. Brown*, No. 05-70-P-S, 2006 U.S. Dist. LEXIS 1628, at *4, *20 (D. Me. Jan. 17, 2006) (*Cohen, M.*) ("Contrary to the defendant's suggestion, [police] were not required to determine whether the blue bag [in a pickup truck] actually belonged to the defendant . . . or whether the defendant owned the cocaine in the glove compartment before they could arrest the defendant." (citing *Maryland v. Pringle*, 540 U.S. 366, 373 (2003))), *aff'd by United States v. Brown*, 500 F.3d 48 (1st Cir. 2007); *United States v. Almeida*, No. 04-56-P-H, 2004 U.S. Dist. LEXIS 15543, at *19 (D. Me. Aug. 6, 2004) (*Cohen, M.*) ("Under the totality of the circumstances, there was probable cause to believe that Almeida constructively possessed the crack pipe found underneath the seat behind which he was sitting." (citing *Pringle*, 540 U.S. at 371-74)), *aff'd by United States v. Almeida*, 434 F.3d 25 (1st Cir. 2006).

10

evidence of marijuana and "exigent circumstances rendered the obtaining of a warrant impracticable," reasoning that "[t]he exigent circumstances presented to [the officer] were related to the nature of marijuana as evidence that easily can be destroyed." 593 A.2d 210, 212-13 (Me. 1991); *see United States v. Samboy*, 433 F.3d 154, 158 (1st Cir. 2005) (citing *United States* v. *Sangineto-Miranda*, 859 F.2d 1501, 1511 (6th Cir. 1988), for the proposition that exigent circumstances exist "when there is an urgent need to prevent evidence from being lost or destroyed, particularly in drug cases where narcotics can be easily and quickly destroyed while a search is progressing" (quotation marks omitted)). The same is true here, as demonstrated by the fact that either Wafford or Martin, although handcuffed, was apparently able to dispose of a bag of pills that was later found on the ground.

[¶17] Because Gillen had probable cause to search Martin for illegal drugs under exigent circumstances, neither the Fourth Amendment nor article I, section 5 of our state constitution barred the search, and the court erred in suppressing its fruits.[2]

---

[2] Article I, section 5 of the Maine Constitution provides protections that are coextensive with the Fourth Amendment. *Clifford v. MaineGeneral Med. Ctr.*, 2014 ME 60, ¶ 67 n.21, 91 A.3d 567.

We further note that even if there were a constitutional defect in Gillen's search at the time that it occurred, the bag of pills in Martin's clothing would have inevitably been discovered through independent, lawful means once a similar bag of pills was discovered on the ground in the area where he had been patted down, and so suppression was unwarranted. *See State v. Nadeau*, 2010 ME 71, ¶¶ 37-38, 1 A.3d 445 (stating that the inevitable discovery doctrine is an "exception to the application of the

The entry is:

> Order vacated. Remanded for entry of an order
> denying the motion to suppress.

---

**On the briefs:**

Todd R. Collins, District Attorney, 8th Prosecutorial District,
Caribou, for appellant State of Maine

James M. Dunleavy, Esq., and Jon P. Plourde, Esq., Currier and
Trask, P.A., Presque Isle, for appellee Eric M. Martin

**At oral argument:**

Todd R. Collins, District Attorney, for appellant State of Maine

James M. Dunleavy, Esq., for appellee Eric M. Martin

Aroostook Superior Court (Houlton) docket number CR-2013-103
FOR CLERK REFERENCE ONLY

---

exclusionary remedy," and setting out the three-part test for application of the doctrine). In its order on the State's motion for reconsideration, the trial court found that "the officers upon finding the drugs on the ground . . . could arrest both [Wafford and Martin]," which would have inevitably led to a valid search of Martin's person incident to the arrest that would have been justified by the discovery of the pills on the ground. *See State v. Foy*, 662 A.2d 238, 241 (Me. 1995).

In light of our conclusion that the warrantless search was supported by probable cause and exigent circumstances, we need not consider the State's alternative argument that the search was proper as incident to a lawful arrest.