STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
DOCKET NO: CR-19-5690

STATE OF MAINE,

v.

ZACHARY CONWAY

)
)
)
)
)
)
)
)

ORDER ON DEFENDANT'S
MOTION TO SUPPRESS

Before the Court is Defendant Zachary Conway's Motion to Suppress. Mr. Conway challenges the validity of a search warrant issued by the Maine District Court for property located in New Hampshire. A hearing on the motion was held on January 27, 2021. For the reasons set forth below, Defendant's Motion to Suppress is GRANTED.

**I. Facts**

The following facts are taken from the affidavits submitted with the search warrant, as well as the facts elicited at hearing:

On October 5, 2019, Sergeant Phillip Jones (now, and hereinafter referred to as "Captain Jones") of the Bridgton Police Department responded to an armed robbery alleged to have taken place in Bridgton. Captain Jones met with Katrina Parker, who stated that three men forcefully removed multiple bags of cannabis plants from her home. Parker told police that two of the men appeared to be carrying firearms; and, one of the men struck her with a "crow bar." She said she recognized one of them, who was later identified as the Defendant, Zachary Conway. Ms. Parker also told Captain Jones that the men were driving "a blue/green sedan with New Hampshire plates."

Captain Jones was able to "ping" the location of the cellphone, alleged to belong to the Defendant, in Conway, New Hampshire. Captain Jones contacted the Conway Police regarding the cellphone ping. Based on the cellphone location data, Conway Police officers contacted an individual who stated that the Defendant approached him about committing a robbery. The individual stated that the Defendant was driving a blue Toyota Corolla registered in the State of New Hampshire. Captain Jones was later informed that the cellphone "ping" indicated movement from Conway to Manchester, New Hampshire.

Manchester Police contacted Captain Jones and informed him that Zachary Conway was also the subject of a separate investigation they were conducting. Captain Jones learned that Manchester Police had spoken with the Defendant's girlfriend, Tehya Charbonneau and obtained a text message sent by Charbonneau to the Defendant referencing "the robbery." (Aff. and R. for Search Warrant pg. 5.) Captain Jones stated that Charbonneau also provided the following information to Manchester Police:

> "[Defendant] had rented a U-Haul truck and made plans to go to Conway, NH with Tehya, her two daughters, and two other friends who she identified as Ryan Barden [DOB omitted] and Brandon Desauliners [DOB omitted]. All of them went to North Conway traveling in the U-Haul [sic] and the Toyota Corolla that was registered to [Defendant]. One [sic] in North Conway, Tehya and her daughters were left at the Applebee's restaurant and the three males drove away in the two vehicles. While she was in the restaurant, Tehya checked a location function on [Defendant's] phone and observed that he was in Maine in a town that she

described as 'Bridge-something." She told them that [Defendant] had planned to go to Maine to visit his friend named 'Steve.' Tehya also stated that Ryan and Brandon were known to carry BB guns that appeared to be real firearms."

During the course of their separate investigation, Manchester Police had obtained a search warrant for the Toyota sedan. They seized both the Toyota Sedan and U-Haul truck. Captain Jones was advised that Manchester Police had observed a crow bar during their search of the Toyota, which they left undisturbed because it fell outside the scope of their search warrant.

On October 16, 2020, eight days after learning all of the above, Captain Jones sought and obtained a search warrant in the Maine District Court for both the Toyota and U-Haul. The application indicated that both vehicles were "currently being secured by the Manchester Police Department, NH." The warrant permitted officers to search both vehicles and seize the following items: burglar's tools, including crow bars; firearms and or items resembling firearms; cannabis stored in trash bags; cell phones, including the Verizon Trac phone; and receipts, ledgers, lists and any other documents showing the identity and details of either vehicle's occupants. Captain Jones traveled to Manchester, NH that same day. He searched both vehicles and seized a number of items.

## II. Discussion

The Maine Constitution provides that "[t]he people shall be secure in their, persons, houses, papers and possessions from all unreasonable searches and seizures[.]" Me. Const. Art. I, § 5; *see also* U.S. Const. Amend. IV. A search conducted without a warrant is presumed unreasonable

unless some other exception to the warrant requirement is found. *See e.g. State v. Martin*, 2015 ME 91, ¶ 8, 120 A.3d 113.

Defendant Zachary Conway seeks to suppress the items seized by Captain Jones from the Toyota and U-Haul vehicles, upon execution of the Maine search warrant in New Hampshire. Because the search was conducted pursuant to a warrant, the Court must first determine whether the warrant was valid. If the warrant was invalid, the Court must next determine whether the search performed by Captain Jones falls into a recognized exception to the warrant requirement. Finally, the court must decide whether suppression is warranted under the circumstances in this case.

### A. Validity of Search Warrant

It has long been recognized that, "any search is per se unreasonable if it lacks two essentials: (1) the existence of probable cause, and (2) the prior determination of such probable cause by a neutral and detached magistrate[.]" *State v. Richards*, 296 A.2d 129, 135 (Me. 1972); *see also Johnson v. United States*, 333 U.S. 10, 13-14 (1949). In Maine, the District Court's authority to issue a search warrant is granted by statute, which provides: "a judge of the District Court . . . shall issue search warrants for any place *in the state* for such purposes as the Constitution of the United States and the Constitution of Maine permit[.]" 15 M.R.S. § 55 (*emphasis added*).

The Maine District Court issued a search warrant for property located in Manchester, New Hampshire. There is no authority in the Maine Constitution, statutes, or other interstate compact that grants a Maine judge authority to issue a search warrant for any place or property located outside the territorial boundaries of Maine. As such, the District Court lacked the authority to

issue a search warrant for the property located in New Hampshire and the warrant is therefore void *ab initio*.[1]

The State's argument that the warrant is valid because it was issued for Captain Jones to enforce the laws of the State of Maine, is unpersuasive. Captain Jones authority to seek and execute a search warrant during an investigation of a Maine crime does not vest the Maine District Court with the authority to authorize the search of property located in New Hampshire. Indeed, it is a fundamental principle of Maine law that the authority of the State does not extend past its territorial boundaries. *See* 1 M.R.S. § 1 ("[t]he jurisdiction and sovereignty of the State extend to all places within its boundaries"). Furthermore, and for the reasons discussed below, this Court cannot contravene the sovereignty of a separate State, nor its separate constitutional protections, simply because an officer was investigating a violation of Maine law.

Based on the forgoing, the court finds and concludes that the search warrant was void *ab initio*; and, as such, the Defendant's motion to suppress shall be considered in the same light as warrantless search. Before considering whether an exception to the warrant requirement applies, however, the Court first determines what authority, if any, Captain Jones had to search property that was located outside the State of Maine.

**B. Scope of Police Authority**

"The geographic scope of [an officer's] authority is defined by statute." *State v. Turner*, 2017 ME 185, ¶ 11, 169 A.3d 931. "No [municipal] police officer has any authority in criminal or traffic infraction matters beyond the limits of the municipality in which the officer is appointed[.]" 30-A M.R.S. § 2671(2). Indeed, an officer's "intentional disregard of territorial limits . . . could require the suppression of evidence." *Turner*, 2017 ME 185, ¶ 20, 169 A.3d 931.

---

[1] Defined as "from the beginning." Black's Law Dictionary (11th. ed. 2019).

Captain Jones is a municipal police officer for the Town of Bridgton. Captain Jones therefore lacks police authority outside the territorial limits of the Town of Bridgton, and certainly lacks police authority outside the borders of the State of Maine. Capt. Jones' knowledge of these territorial limitations was evident at hearing, where he testified that if he were in pursuit of a vehicle that crossed into New Hampshire, police in that State would need to assume pursuit of the vehicle. Despite this understanding, Captain Jones obtained a search warrant for property located outside Maine's territorial limits. He traveled to New Hampshire from Maine and conducted a search and seizure of property from both the Toyota and U-Haul located in Manchester.

Based on the forgoing, the Court finds and concludes that Captain Jones exceeded the scope of his statutory authority. That said, whether the evidence sized by Captain Jones is admissible does not, necessarily, turn on whether he exceeded his authority. Instead, the Court must determine whether suppression is warranted in accordance with the exclusionary rule or whether it is admissible because it falls within a recognized exception to the warrant requirement.

### C. Exclusionary Rule

The exclusionary rule is a judicially developed mechanism used to deter unlawful police conduct. *See e.g. State v. Weddle*, 2020 ME 12, ¶ 31, 224 A.3d 1035; *quoting Illinois v. Krull*, 480 U.S. 340, 347 (1987). Typically, if evidence is illegally obtained, the exclusionary rule "precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Id*. The rule "is neither intended nor able to cure the invasion of the defendant's rights which he has already suffered." *Weddle*, 2020 ME 12, ¶ 32, 224 A.3d 1035; *quoting United States v. Leon*, 468 U.S. 897, 906 (1984). "Instead, the rule acts as a remedial device that 'safeguard[s] Fourth Amendment rights generally through its deterrent effect, rather than [as] a personal constitutional right of the party aggrieved.'" *Id*.; *quoting United States v. Calandra*, 414 U.S. 338, 348 (1974). As such, the

exclusionary rule is properly restricted "to those situations in which its remedial purpose is effectively advanced." *Id.*

### D. Exception to the Warrant Requirement

If an officer conducts a search without a warrant, the State bears the burden of proving by a fair preponderance of the evidence that a warrantless search falls within an exception to the warrant requirement. *See State v. Johnson*, 413 A.2d 931, 933 (Me. 1980). At hearing, the State argued that the Court should consider the following exceptions to the warrant requirement: (1) the good faith exception; (2) the automobile exception; and (3) the plain view exception.

### (1) Good Faith Exception

Under the good faith exception to the warrant requirement, illegally obtained evidence is often admissible if the officer acted with objective good faith that his or her actions were constitutionally permissible. *See e.g. United States v. Leon*, 468 U.S. 897, 922 (1984)(recognizing the good faith exception under the Fourth Amendment to the United States Constitution). The Law Court has held, on just one occasion, that illegally seized evidence is admissible under the good faith exception. *See Weddle*, 2020 ME 12, ¶¶ 34-37, 224 A.3d 224. In *Weddle*, the Law Court determined that when an officer acts "in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment" the exclusionary rule does not apply because suppression "can in no way affect [the officer's] future conduct[.]" *Weddle*, 2020 ME 12, ¶ 33, 224 A.3d 1035; *quoting Krull*, 480 U.S. at 348-49. The Court took a balancing approach in reaching its decision, stating that "[i]n determining whether the purposes of the exclusionary rule would be served in a specific case, [the court] examine[s] whether the rule's deterrent effect will

be achieved and weighs the likelihood of such deterrence against the cost of withholding reliable information from the truth-seeking process." *Id.*; *quoting Krull*, 480 U.S. at 347.

In *Weddle*, an officer seized a blood sample from a driver who was involved in a fatal motor vehicle accident. *Weddle*, 2020 ME 12, ¶ 5, 224 A.3d 1035. Although the officer suspected that the driver could be intoxicated, the officer lacked probable cause to seize and search the driver's blood for intoxicants. *Id.* Instead, the officer seized the driver's blood based solely on his understanding that Maine law required blood to be drawn from any driver who was involved in a fatal car accident, without regard to probable cause. *Id.* On appeal, the Law Court held that the mandatory blood draw statute was facially unconstitutional. *Weddle*, 2020 ME 12, ¶ 29, 224 A.3d 1035. However, the Law Court concluded that "in this highly unusual and exceptional circumstance," suppression of the driver's blood was not warranted. The officer acted pursuant to a statute that he had no reason to believe was unconstitutional. The Court found, based on the good faith exception, that the evidence obtained was admissible. *Weddle*, 2020 ME 12, ¶ 35, 224 A.3d 1035.

Prior to the "highly unusual and exceptional circumstance" in *Weddle*, the Law Court has been careful to avoid ruling on whether the good faith exception is recognized under the Maine Constitution. *See e.g. State v. Arbour*, 2016 ME 126, ¶ 16, n. 16, 146 A.3d 1106; *State v. Nadeau*, 2010 ME 71, ¶ 48, n. 10, 1 A.3d 445; *State v. Tarantino*, 587 A.2d 1095, 1097-98 (Me. 1991). In fact, the Law Court has specifically observed in a previous instance "that a number of state supreme courts have rejected the good faith exception on state constitutional grounds." *State v. Nunez*, 2016 ME 185, ¶ 17, n. 8, 153 A.3d 84. Because of this uncertainty, a brief discussion of how some the Federal Circuit Courts have approached the good faith exception and void warrants is helpful in reaching a decision in this matter.

### (a) Good Faith Exception and Void Warrants

Whether the good faith exception applies when a warrant is void *ab initio* has not been addressed by the United States Supreme Court and the Circuit Courts are split on the issue. In the Sixth Circuit, courts apply a balancing test. To suppress evidence obtained pursuant to a void warrant, the benefits of deterrence must outweigh the cost to the justice system. *United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2009). The Sixth Circuit has further explained that the culpability of the officers involved in the illegal search is relevant, but not determinative of whether suppression is warranted. *See e.g. United States v. Godfrey*, 427 Fed.Appx. 409, 413 (6th Cir. 2011); *see also Herring v. United States*, 555 U.S. 135, 143 (2009)("The extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct."). The First Circuit has held that when an officer acted pursuant to an invalid warrant, suppression is warranted only in those limited instances where: (1) the judge issuing a warrant was misled by information in an affidavit that the affiant knew was false or was made in reckless disregard of the truth; (2) the issuing judge wholly abandoned his judicial rule; (3) the executing officer relied on a warrant so lacking in indicia of probable cause as to render the official belief in its existence unreasonable; or (4) a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *See United States v. Levin*, 874 F.3d 316, 322 (1st Cir. 2017); *quoting Leon*, 468 U.S. at 923.

In this case, the court finds that the balancing test adopted by the Sixth Circuit is substantially similar to the Law Court's reasoning in *Weddle*. Therefore, in order for this court to properly determine whether the good faith exception applies, the Court will "examine whether the [exclusionary] rule's deterrent effect will be achieved . . . [by] weigh[ing] the likelihood of such deterrence against the costs of withholding reliable information from the truth-seeking process."

*Weddle*, 2020 ME 12, ¶ 33, 224 A.3d 1035. Further, because the Law Court has not specifically recognized or defined the parameters of the good faith exception in this instance, the Court will consider the culpability of Captain Jones as just one factor influencing the applicability of the exclusionary rule.

### i. Likelihood of Deterrence

As the parties recognized at hearing, there are no cases in Maine that address the issue of an officer searching property outside the State's territorial boundary. As such, suppression of the evidence seized by Captain Jones would certainly be a clear deterrence to any subsequent officer who might seek to search evidence located outside the State. To hold otherwise would sanction an officer's conduct in defiance of their statutory authority and disregard of the sovereignty of another State. Accordingly, the likelihood that suppression would deter future unlawful conduct is strong under these circumstances.

### ii. Reasonableness of Captain Jones' Conduct

The Law Court adopted the following rationale regarding how reasonableness factors into whether suppression will effectively deter illegal police conduct:

> "Where the officer's conduct is objectively reasonable . . . excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding evidence can in no way affect his future conduct unless it is to make him less willing to do his duty."

*Weddle*, 2020 ME 12, ¶ 33, 224 A.3d 1035; *quoting Krull*, 480 U.S. at 347.

Based on the evidence presented, the court finds that Captain Jones' application for a search warrant was not objectively reasonable. At hearing, Captain Jones admitted that if he were in active pursuit of a suspect, New Hampshire police would be charged with taking over that pursuit once the suspect crossed into New Hampshire. Captain Jones was in active communication with Manchester Police regarding their separate, co-existent investigations. Captain Jones also waited approximately eight days from the time he learned Manchester Police had possession of the vehicles before he sought a search warrant. There is no evidence that Captain Jones made any attempt to coordinate with Manchester Police to either request or obtain a valid New Hampshire search warrant, or arrange for the property to be transported to Maine. Finally, it is not objectively reasonable for an experienced municipal police officer to think that he or she has authority to act in the State of New Hampshire, particularly when their own authority rarely extends beyond the territorial boundaries of their given municipality. Combined, these facts make it difficult, if not impossible, to find that Captain Jones conduct in obtaining a search warrant for property located in New Hampshire was objectively reasonable.

It is also difficult to imagine how suppression in this case would affect another officer's ability or willingness to fulfill his or her duty as a law enforcement officer. As stated above, Captain Jones could have obtained a proper search warrant or arranged for the vehicles to be transported to Maine.[2] Suppression should not make Captain Jones, or any other officer, less willing to seek proper search warrants for out-of-state property. However, suppression would certainly deter future officers from seeking and conducting extra-territorial searches in an attempt

---

[2] It has been this court's experience, that out-of-state officers investigating a crime committed in their home state have and do request that Maine officers seek a search warrant for property located in Maine.

to ferret out evidence of a crime. As such, exclusion in this instance is an effective deterrence against further "grossly negligent or . . . recurring or systemic negligence" in the search warrant process. *See Master*, 614 F.3d at 242.

Based on the forgoing, the court finds and concludes that it was not objectively reasonable for Captain Jones to assume he had authority to search property that was located outside the State of Maine, with or without a Maine search warrant.

### iii. Cost to the Truth-Seeking Process

The Court notes that the Sixth Circuit favors preserving evidence for use in obtaining convictions, even if illegally seized, over excluding evidence in order to deter police misconduct unless the officers engage in "deliberate, reckless, or grossly negligent conduct." *Master*, 614 F.3d at 243; *quoting Herring*, 555 U.S. at 144. The court also notes that it is unsettled whether Maine's application of the good faith exception is narrower than that of the United States Supreme Court. *See Nunez*, 2016 ME 185, ¶ 17, n. 8, 153 A.3d 84. Regardless of application, the court concludes that the benefit of deterrence in this case outweighs any attendant cost that suppression may have.

Suppression in this case does not foreclose a widely utilized law enforcement technique, nor does it impose any additional restrictions on law enforcement investigations. The only "cost" to the truth-seeking process is the affirmance that law enforcement officers cannot act outside the scope of their prescribed authority. No truth-seeking system has a legitimate interest in preserving the unlawful exercise of police power. Because there is no legitimate interest that can be furthered by the unlawful exercise of police power, the benefit of deterrence far outweighs any other interest at stake here. Therefore, the court finds and concludes that Captain Jones' search of the Toyota

and U-Haul was unlawful; and, the State has failed to prove by a preponderance of the evidence that the good faith exception to the warrant requirement applies in these circumstances.

## 2. Automobile Exception

Maine has adopted the United States Supreme Court's automobile exception to the warrant requirement in that "the existence of probable cause justifies a warrantless seizure and reasonable search of a motor vehicle . . . whether or not exigent circumstances prevailed at either the time of the seizure or the time of the search." *State v. Lzzo*, 623 A.2d 1277, 1181-82 (Me. 1993)(citations and quotations omitted). "Probable cause to search exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Michael M.*, 2001 ME 92, ¶ 6, 772 A.2d 1179. Probable cause "is flexible and based on common sense" but "requires more than mere suspicion[.]" *State v. Martin*, 2015 ME 91, ¶ 10, 120 A.3d 113 (citations and quotations omitted). "The information determining the existence of probable cause includes all the information known to the police, and the determination is based on an objective standard, not on whether the particular officer believed he had probable cause." *Id.* (citations and quotations omitted).

### a. U-Haul

"To meet the standard for probable cause, the warrant affidavit must set forth some nexus between the evidence to be seized and the locations to be searched." *State v. Samson*, 2007 ME 33, ¶ 15, 916 A.2d 977. Based on the facts presented, the court finds the nexus between the suspected robbery and the U-Haul was insufficient and, therefore, Captain Jones lacked probable cause to search the U-Haul.

The only mention of the U-Haul came from the Defendant's girlfriend, who stated that the Defendant left Applebee's with two friends in both the U-Haul and Toyota. The victims of the robbery did not reference a U-Haul. There is nothing in the record that places the Defendant behind the wheel of the U-Haul. There is no evidence that the U-Haul was in anyway used in furtherance of the robbery, and no evidence suggesting how or why the U-Haul was transported to Manchester, New Hampshire. Without more, it cannot be said that there is any probable nexus between the U-Haul and the crime of robbery beyond that of mere suspicion. As such, Captain Jones' search of the U-Haul does not fall within the automobile exception to the warrant requirement because Captain Jones lacked the probable cause necessary to justify the search.

### b. Constitutional Requirements of Vehicle Stops Under the New Hampshire Constitution

The Court also finds that it would be inappropriate to apply Maine's automobile exception to Captain Jones' search of the vehicles. The New Hampshire Supreme Court has determined that "the federal automobile exception is too broad" and has adopted "a more limited automobile exception to [it's] warrant requirement[.]" *State v. Glavan*, 171 N.H. 457, 459, 198 A.3d 254, 256 (N.H. 2018)(citations and quotations omitted). "Under that limited exception, the police do not need a warrant to enter an automobile when: (1) the vehicle has been stopped in transit pursuant to a lawful stop; and (2) the police have probable cause to believe that a plainly visible item in the vehicle is contraband." *State v. Cora*, 170 N.H. 186, 196, 167 A.3d 633, 642 (N.H. 2017). New Hampshire reasons that a warrantless search is justified only when a vehicle's mobility increases the likelihood that its occupants will remove or destroy the contents of the vehicle. *State v. Camargo*, 126 N.H. 766, 771, 498 A.2d 292, 292 (N.H. 1985). Conversely, Maine does not require any exigent circumstances under its application of the automobile exception. *See Tarantino*, 587

A.2d at, 1098 (Me. 1991)(citations and quotations omitted); *see also California v. Carney*, 471 U.S. 386 (1985).

In this case, both the U-Haul and Toyota were in Manchester Police custody. As such, neither vehicle posed any mobility related risk as contemplated by New Hampshire's exigency requirements. Moreover, there is no evidence that either vehicle was seized by New Hampshire police while in-transit. Captain Jones search, without a valid warrant, did not comport with the constitutional protections applicable within the State of New Hampshire. As such, it would be inappropriate for this court to contravene the protections New Hampshire affords its residents when a search is conducted entirely within the State of New Hampshire. Accordingly, the court declines to extend the automobile exception to the warrant requirement in this case for either the Toyota or U-Haul.

### 3. Plain View Exception

Generally, objects falling within the plain view of an officer are subject to seizure without violating a defendant's search and seizure rights. *See State v. Sullivan*, 2018 ME 37, ¶ 15, 181 A.3d 178. In order for the plain view exception to apply, the "incriminating character of the evidence must be immediately apparent" to the officer, and the officer must have a legitimate reason to be in the place from which they make their observation." *Id.*; *see also State v. McNaughton*, 2017 ME 173, ¶ 42, 168 A.3d 807. In New Hampshire however, the plain view exception also requires that "the discovery of evidence . . . [be] inadvertent." *State v. Davis*, 149 N.H. 698, 701, 828 A.2d 293 (N.H. 2003).

In this case, the only item in plain view of Captain Jones was the crow bar. However, Captain Jones did not have a legitimate reason to be in a position to view the crow bar because he

was acting outside his lawful authority when he traveled to New Hampshire to search the Toyota. In addition, the State has failed to prove that Captain Jones' seizure of the item without a warrant comports with the requirements of the plain view exception. Without more, the court cannot conclude that Captain Jones was justified in seizing the crow bar under the plain view exception.

Finally, and for the reasons stated above, it would be inappropriate to apply the plain view exception in this instance because Captain Jones' discovery of the crow bar was not inadvertent. Captain Jones traveled to New Hampshire with the specific intent to seize the crow bar that was seen by the Manchester Police. Therefore, the plain view exception is likely inapplicable to this case when applying New Hampshire law and, again, this Court is unwilling to contravene the protections New Hampshire affords its residents. Accordingly, the Court declines to extend the plain view exception to the warrant requirement to the Toyota or U-Haul.

### III. Conclusion

The Maine District Court lacked the authority to issue a search warrant for property located outside the state of Maine and thus the search warrant issued for the Toyota and U-Haul located in Manchester New Hampshire was void *ab initio*. Captain Jones is an experienced police officer who has demonstrated an understanding that his police authority has territorial limitations. As such, it was not objectively reasonable for Captain Jones to rely on the search warrant issued for out-of-state property. The benefit of deterring future unlawful conduct far outweighs the diminished cost that exclusion would have on the truth-seeking process. Finally, it would be inappropriate to apply the automobile or plain view exceptions in this case because such would contravene the heightened protections New Hampshire affords its residents during the course of police investigations.

Based on the forgoing, Defendant's Motion to Suppress is GRANTED.

The court ORDERS that all items seized by Captain Jones during his search of the Toyota and U-Haul are hereby excluded.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _February 17, 2021_ _____

MaryGay Kennedy, Justice
Maine Superior Court

STATE OF MAINE
 v.
ZACHARY R CONWAY
91 KIDDER DRIVE
FREEDOM NH 03836

*MLR/SC#160-21*

CRIMINAL DOCKET
CUMBERLAND, ss.
Docket No CUMCD-CR-2019-05690

**DOCKET RECORD**

*2/17/21*

DOB: 02/13/1996
Attorney: NICOLE MILAM
   H & H LAW CENTER
   PO BOX 4784
   PORTLAND ME 04112
   APPOINTED 06/23/2020
Attorney: DEVENS HAMLEN
   HEMINWAY HAMLEN LAWCENTER PA
   PO BOX 4784
   PORTLAND ME 04112
   APPOINTED 05/12/2020

State's Attorney: JONATHAN SAHRBECK

*dhamlen@hhlawcenter.com*

Filing Document: CRIMINAL COMPLAINT
Filing Date: 10/21/2019

Major Case Type: FELONY (CLASS A,B,C)

## Charge(s)

1 **ROBBERY**           10/05/2019 BRIDGTON
Seq 4293 17-A 651(1)(C)    Class A
 JONES     / BRI

2 **ROBBERY**           10/05/2019 BRIDGTON
Seq 747 17-A 651(1)(D)    Class A
 JONES     / BRI

3 **ROBBERY WITH A DANGEROUS WEAPON**  10/05/2019 BRIDGTON
Seq 4294 17-A 651(1)(E)    Class A
 JONES     / BRI

4 **KIDNAPPING**          10/05/2019 BRIDGTON
Seq 4313 17-A 301(1)(B)(1)   Class A
 JONES     / BRI

5 **AGGRAVATED ASSAULT**      10/05/2019 BRIDGTON
Seq 630 17-A 208(1)(B)    Class B
 JONES     / BRI

6 **THEFT BY UNAUTHORIZED TAKING OR TRANSFER** 10/05/2019 BRIDGTON
Seq 8423 17-A 353(1)(A)    Class E Charged with INDICTMENT on Supplem

## Docket Events:

10/21/2019 FILING DOCUMENT - CRIMINAL COMPLAINT FILED ON 10/21/2019

10/21/2019 Charge(s): 1,2,3,4,5
   WARRANT - ON AFFIDAVIT REQUESTED ON 10/21/2019

10/21/2019 Charge(s): 1,2,3,4,5