STATE OF MAINE                          UNIFIED CRIMINAL COURT
AROOSTOOK, ss                           DOCKET NO. AROCD-CR-23-20235


STATE OF MAINE                     )
                                   )
                                   )
            v.                     )     ORDER ON MOTION TO SUPPRESS
                                   )
                                   )
MEAGAN TARDIF                      )
                                   )


The Defendant was charged by the State in a seven-count indictment with the

following offenses:

1. Aggravated Trafficking in Scheduled Drugs, 17-A M.R.S. §1105-A(1)(M) - Class A;
2. Aggravated Trafficking in Scheduled Drugs, 17-A M.R.S. §1105-A(1)(B)(1)- Class A;
3. Aggravated Unlawful Furnishing of Scheduled Drugs, 17-A M.R.S. §1105-C(1)(B)(1) - Class B;
4. Aggravated Unlawful Furnishing of Scheduled Drugs, 17-A M.R.S. §1105-C(1)(B)(1) - Class B;
5. Unlawful Possession of Scheduled Drugs, 17-A M.R.S. §1107-A(1)(B)(8) - Class C;
6. Unlawful Possession of Scheduled Drugs, 17-A M.R.S. §1107-A(1)(A)(3) - Class C; and
7. Aggravated Trafficking in Scheduled Drugs, 17-A M.R.S. §1105-A(1)(B)(1)- Class A.

The events that served as the State's basis for the charges were alleged to have

occurred in Madawaska on or about June 27, 2023. Through her motion to suppress,

Defendant contends that the officer lacked probable cause to search the Defendant's

person or clothing.

A hearing on the Defendant's motion to suppress was held on December 8, 2023.

The Defendant was present and represented by Stuart Tisdale, Esq. The State was

1

represented by Assistant District Attorney John Inglis and District Attorney Todd Collins. The court received testimony from Officer Seth Querze of the Madawaska Police Department. Defendant called no witnesses and offered no evidence.

After the hearing, the Defendant and the State were granted additional time to submit written argument. Both submissions were received by the court on January 12, 2024. Based upon the evidence presented at the hearing, the court issues the following findings of fact, conclusions of law, and resulting order:

## Findings of Fact

On the evening of June 27, 2023, Seth Querze of the Madawaska Police Department (hereinafter "Querze") was on routine patrol in full uniform and in a marked cruiser. He initiated a traffic stop on Main Street due to his observation of a white Volkswagen hatchback (hereinafter "the vehicle") with a defective headlight. Specifically, one of the headlights was out. He initiated the traffic stop and the vehicle pulled to the side of the road. Upon approaching the vehicle, Querze recognized the operator as Angelina Dube Peterson (hereinafter "Peterson"), someone with whom he had prior interactions regarding domestic violence and drug incidents. Querze also noted a passenger in the front seat of the vehicle, later identified as the Defendant. Between the Defendant and Peterson, sitting on the center console in plain view, Querze observed a small piece of tin foil. Due to his training and experience, Querze immediately recognized the tin foil as an item of drug paraphernalia used by drug users to ingest illegal drugs.

Querze requested and received license and registration information from Peterson. Upon returning to his cruiser, Querze contacted Peterson's probation officer to

2

confirm the conditions and search parameters of her probation, and he also conducted the standard license and warrant check. Peterson's probation included being subject to random search and testing for illegal drugs. The license and warrant check revealed a discrepancy as to what Peterson's exact name was, in terms of being hyphenated or Dube Peterson as opposed to Peterson Dube. By this point in the encounter, Querze requested another officer to come to the scene to assist with the search of the vehicle. The additional assistance requested was also due in part to Querze's knowledge that Peterson had been previously tazed by a Madawaska officer during an encounter.

Querze returned to the vehicle to confirm Peterson's actual name and observed that the tin foil had been removed from the center console and secreted. Querze again returned to his cruiser and performed the license and warrant check of Peterson. Querze then simply waited an additional ten (10) minutes for Trooper Levesque to arrive on scene. Upon his arrival, both occupants were removed from the vehicle. Peterson was searched and cuffed. No contraband was discovered, and she was placed in a police cruiser. Querze and another officer searched the vehicle while Trooper Levesque stood with the Defendant. The search of the vehicle and Dube's person revealed suboxone pills and strips, $77.00 in the center console, and a purple cut straw that Querze identified by his training and experience as used for the ingestion of illegal drugs.

A drug dog was deployed on the vehicle and showed interest in a speaker box and a portion of the car. The further search revealed no other contraband. During this entire process, the Defendant simply stood by with Trooper Levesque. There is no dispute that

3

she was not free to leave, but she was not otherwise restrained. She appeared to just observe and smoke cigarettes.

After the conclusion of the search, Querze inquired if the Defendant had been searched and he was informed by an officer that she emptied her pockets voluntarily. Querze approached the Defendant and asked if she had been searched. The Defendant responded that "they checked my pockets." Querze stated, "do you mind just grabbing your bra and then shaking it out to make sure there is nothing in there?" Without verbally responding, the Defendant pulled her shirt out away from her body. Querze then asked her to lift her shirt away from her body and then shake her bra so that if there was anything in there, it would fall out and not get caught in her shirt. The Defendant did as requested and Querze could clearly hear some objects clanging around in her clothing. He asked her what it was and before she responded, he asked her to take it out and give it to him. She did so and handed him a pipe that Querze immediately identified as being consistent with a pipe used for smoking methamphetamine. Querze asked her to shake it again and thereafter she pulled another pipe out and handed it to him. She contended that there was no more material in her clothing. Querze asked her to shake her clothing again and a container dropped out of her clothing to the ground. The Defendant began to bend down to pick it up and Querze told her not to do so. He picked up the container, opened it and asked her if it was meth. She did not reply and merely exhaled a full breath of cigarette smoke to the side. The Defendant was then placed under arrest. Once placed under arrest, she was instructed to remove any other contraband. In response to the instruction, she handed Querze another container from her bra. The container had a

4

white powdery substance that Querze identified, based on his training and experience, as consistent with fentanyl. At the same time she handed this container to Querze, she handed him the tin foil that was previously on the center console at the initiation of the traffic stop. Upon closer inspection, Querze noted that the tin foil had burn residue on it consistent with its use for the ingestion of illegal drugs.

## Analysis

In order to justify a seizure, the State must show that the officer had "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Gulick*, 2000 ME 170, P12-P13, 759 A.2d 1085, 1088 (Citing, *State v. Dulac*, 600 A.2d 1121, 1122 (Me. 1992)(quoting *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). Brief intrusions based upon reasonable and articulable (1) safety concerns, see *State v. Pinkham*, 565 A.2d 318, 319 (Me. 1989); (2) suspicion that the defendant has committed a crime, see *Terry*, 392 U.S. at 21; *State v. Mehuren*, 594 A.2d 1073, 1075 (Me. 1991); or (3) suspicion that the defendant has committed a traffic infraction, see *State v. Hill*, 606 A.2d 793, 795 (Me. 1992), are "reasonable" and are, therefore, not in violation of the Fourth Amendment. *Id.*

As soon as Querze initiated a traffic stop, a seizure occurred. *See, State v. Garland*, 482 A.2d at 142-143 (Me. 1984). As of that moment, the officer had a reasonable articulable suspicion to warrant the intrusion. The vehicle did not have two operable front headlights and therefore was not in compliance with 29-A M.R.S. §1904.

The Defendant contends that the additional delay and search of her person as a passenger of the vehicle were in violation of her Constitutional rights. In a traffic stop,

5

officers may insist that passengers exit the vehicle without even a reasonable suspicion that they were engaged in wrongdoing. *Maryland v. Wilson,* 519 U.S. 408, 413-15, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997). A police officer may also request identifying information from the passengers in a traffic stop without particularized suspicion that they pose a safety risk or are violating the law, "[s]o long as the request [does] not 'measurably extend the duration of the stop.'" *United States v. Fernandez,* 600 F.3d 56, 57, 62 (1st Cir. 2010). The court's inquiry is therefore into whether the officer diligently pursued a means of investigation that was likely to confirm or dispel his suspicions quickly. *U.S. v. Sharpe,* 470 U.S. 675, 686 (1985). The reasonableness of the officer's actions must be viewed based upon the totality of the circumstances.

Querze clearly observed drug paraphernalia in plain view near both the driver and the Defendant at the time of the initial encounter. The procedure employed by Querze to determine whether there were warrants, bail conditions, or orders prohibiting contact between the occupants of a vehicle involved in a traffic stop did not "measurably extend the duration of the stop." *Fernandez* at 62.

What extended the stop was the full search of the vehicle and the deployment of the drug sniffing dog to the vehicle's interior. The Defendant does not challenge the search of the vehicle due to the circumstance and the requested search pursuant to Peterson's probation conditions.

"The existence of probable cause justifies a warrantless seizure and reasonable search of a motor vehicle irrespective of the existence of exigent circumstances." *State v. Ireland,* 1998 ME 35, ¶ 7, 706 A.2d 597, 599 (Citing, among others, *U.S. v. Infante- Ruiz,* 13

6

F.3d 498, 502 (1st Cir. 1994)("It is now established that if the police have probable cause to believe that either a vehicle or a container within a vehicle contains contraband, evidence of crime, or other matter that may lawfully be seized, no Fourth Amendment violation occurs ....")). "Today, the inherent mobility of a motor vehicle coupled with the reduced expectation of privacy associated with it justifies the warrantless search of that vehicle so long as the search is supported by probable cause." *State v. Tomah*, 586 A.2d 1267, 1269 (Me. 1991)(*Citing, State v. Tarantino*, 587 A.2d 1095 (Me. 1991); *United States v. Panitz*, 907 F.2d 1267, 1271 (1st Cir. 1990)).

"Probable cause exists when the officers' personal knowledge of facts and circumstances, in combination with any reasonably trustworthy information conveyed to them, would warrant a prudent person to believe that the area to be searched holds evidence of a crime. . ." *Id.* (Citing, *State v. Drown*, 2007 ME 142, ¶8, 937 A.2d 157, 159). "In order for the plain view exception to the warrant requirement to apply, the "incriminating character" of the evidence must be "immediately apparent," *State v. McNaughton*, 2017 ME 173, ¶ 42, 168 A.3d 807, and the officers must have a legitimate reason to be in the place from which they make their observation, *Coolidge*, 403 U.S. at 465-66." *State v. Sullivan*, 2018 ME 37, P15, 181 A.3d 178, 184. Querze observed the paraphernalia in plain view from his position at the driver's side door and the incriminating character of the paraphernalia was immediately apparent.

The Law Court has observed:

"[A] car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing. Here we think it was reasonable for the officer to infer a common enterprise among the three men. The

7

quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him."

*State v. Martin*, 2015 ME 91, ¶ 12, 120 A.3d 113, 117 (Citing, *Maryland v. Pringle*, 540 U.S. 366, 370–71, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003)). After the search of Peterson's purse and the vehicle revealed additional paraphernalia and suboxone pills, not in their proper prescription bottles, those factors combined with all of the other factors set forth above provided the officers with probable cause to search the vehicle occupants. 22 M.R.S. §2383-B(1); *State v. Michael M.*, 2001 ME 92 ¶6, 772 A.2d 1179, 1182 ("Probable cause to search exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place"). The fact that the paraphernalia (tin foil) was removed by one of the occupants, secreted, and not found either during the search of Peterson or the search of the vehicle, is certainly suggestive of the Defendant's role in its disappearance. In fact, the subsequent search revealed that the Defendant indeed secreted the tin foil and other contraband in her clothing.

### Conclusion

Based upon the foregoing findings of fact and conclusions of law, the court finds the search of the Defendant and her clothing to be permissible. The Defendant's motion to suppress is hereby **DENIED**. This matter shall proceed to docket call.

The entry shall be:

For the foregoing reasons, the Defendant's Motion to Suppress is **DENIED**.

Dated: January 2 9 , 2024

_____
Justice, Maine Superior Court

8